F. A. ORDELHEIDE, Administrator of Estate of
WALTER L. LEEK, v. MODERN BROTHER-
HOOD OF AMERICA, Appellant.

**Division One, March 1, 1910.**

**APPELLATE JURISDICTION: Constitutional Question: Raised
Only By Injured Party.** An act of the Legislature will be as-
sumed to be valid until someone whose rights are injuriously
affected and specially invaded attacks its validity. An insurance
company cannot complain that the statute providing that a
policy "issued by any company doing business in this State, to
a citizen of this State" is not avoided by the suicide of the in-
sured, discriminates in favor of policyholders who are citizens
of this State and against those who are not citizens, and for that
reason is unconstitutional and void; nor by such an attack on
the statute give the Supreme Court jurisdiction of an appeal
from a judgment on a $1000 policy. As the company is in no
wise prejudiced by the statute, it cannot raise the point of dis-
crimination for either the citizens of this or another State and
assume to champion their wrongs, and cannot be heard to com-
plain that the statute is unconstitutional because it discriminates
against certain policyholders.

Appeal from Warren Circuit Court.—*Hon. James D.
Barnett,* Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*Ball & Sparrow* for appellant.

*Emil Roehrig* for respondent.

LAMM, P. J.—Walter L. Leek died by his own
hand, unmarried and intestate, on June 14, 1905, then
(and always since his birth) a citizen of Warren coun-
ty, Missouri. Ordelheide was appointed administrator
of his estate, qualified and took upon himself the bur-
den of administration.

The defendant is a corporation domiciled in Iowa
and for ten or twelve years last past did a life insur-

ance business in Missouri under a license from the Insurance Department permitting it to insure its members as a fraternal, beneficiary association; it having a lodge system, ritual and the other prerequisites of that form of insurance.

In 1903 Leek made written application for membership and a benefit certificate in defendant, in which application he agreed that in the event of his death by suicide, whether sane or insane, any benefit certificate issued by said fraternity should be void. Presently his application was accepted and he became a member of the local lodge and defendant issued to him a beneficiary certificate for $1000.

He remained a member in good standing to the day of his death.

The policy, *inter alia,* contained this provision: "If the holder of this certificate shall be expelled or suspended by the lodge . . . or shall die in consequence of a duel, or by his own hand, whether sane or insane . . . then this certificate shall be null and void," etc.

The provision designating the beneficiary, in case of death, is in part as follows: "The Modern Brotherhood of America issues to Walter L. Leek of Warrenton, county of Warren, State of Missouri, this membership certificate, which entitles him to membership in said fraternity, and in case of the death of said member while in good standing, permits his beneficiary to participate in the mortuary fund to the amount of one full assessment on all members in good standing in the fraternity not to exceed one thousand dollars, which shall be paid to legal representatives, related to the member as ——— within ninety days after said satisfactory proofs of such member's death shall have been furnished by the beneficiary to the board of directors at Mason City, Iowa."

Due death proofs were made, defendant refused to pay and Ordelheide, as administrator, sued on the

policy in the Warren Circuit Court. Judgment going for $1076.25, defendant appeals here.

The question of jurisdiction confronts us *in limine* and therefore bespeaks preliminary disposition. Attending to that question, we observe:

The theory of the petition is that defendant is an old-line life insurance company. It is contended in plaintiff's brief that by the omission to name a beneficiary in the policy of the class of blood kin or relationship by marriage, etc., as provided in sections 1408 and 1410, Revised Statutes 1899, and by the use of the term "legal representatives" in the policy, defendant thereby is put outside of the pale of fraternal beneficiary associations, although it complies in other respects with the statutory designation of such associations.

*Contra,* defendant, by answer, defends on the theory it is a fraternal benefit association; that by virtue of such fact it may contract against liability in cases of *felo de se;* and therefore is not amenable to the statutory limitations on the powers of old-line companies to contract against self-destruction—that statute reading (Sec. 7896, R. S. 1899): "In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, to a citizen of this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

However, there is another defense interposed, by way of casting an anchor to the windward, *viz.,* the unconstitutionality of section 7896. The cause was tried without a jury or instructions. By briefs the constitutional point is developed as follows: Assuming (for argument's sake) that defendant is not a fraternal beneficiary association, but is an old-line life insurance company, yet as the policy contains a provision

making the insurance void in case of suicide, such policy provision should be enforced in spite of the statute, because that statute is void in that it discriminates in favor of policy-holders and beneficiaries who are citizens of this State and against those who are not citizens (although within the jurisdiction of the State), thereby violating named provisions of the State and Federal Constitutions. On this contention hinges our jurisdiction and we think we have none. This because:

A grave provision of the Constitution may not be invoked by every litigant at every turn to cause an act of the Legislature to perish by judicial construction, or to take away or confer jurisdiction. Not only may the right to raise a constitutional point be waived, but such point may be injected untimely, and (what is more to the point) it may be raised by a litigant not entitled to raise it at all or invoke a given constitutional safeguard on the record presented to the court. Said Owen Glendower (sweepingly):

"I can call spirits from the vasty deep."

Retorted young Henry Percy, surnamed Hotspur (full of critical doubt):

"Why, so can I, and so can any man;
But will they come when you do call for them?"

Somewhat as it was of old in the days of Henry IV., Falstaff, Mortimer, Glendower, Poins, Bardolph and Hotspur et al., with *spirits,* so is it now with constitutional points. A litigant may call on the Constitution but will it come? Whether it will or no depends not a little on whether the litigant has the right to make the call. In deciding that delicate and turning question stress must be laid on the comity that should exist between the judicial and the legislative department.

Says Cooley (Cooley's Const. Lim. [7 Ed.], p. 228): "The task," *i. e.,* the task of declaring a statute unconstitutional) "is therefore a delicate one, and

only to be entered upon with reluctance and hesitation. It is a solemn act in any case to declare that that body of men to whom the people have committed the sovereign function of making the laws for the commonwealth, have deliberately disregarded the limitations imposed upon this delicate authority, and usurped power which the people have been careful to withhold." "Neither will a court" (continues that author, p. 231), "as a general rule, pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause." Adopting the language of STUART, J., in Hoover v. Wood, 9 Ind. 1. c. 287, our author goes on to say: "While courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. They will not seek to draw in such weighty matters collaterally, nor on trivial occasions. It is both more proper and more respectful to a co-ordinate department, to discuss constitutional questions only where that is the very *lis mota*. . . . Nor (p. 232), will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it. On this ground it has been held that the objection that a legislative act was unconstitutional, because divesting the rights of remaindermen against their will, could not be successfully urged by the owner of the particular estate, and could only be made on behalf of the remaindermen themselves. And a party who has assented to his property being taken under a statute cannot afterwards object that the statute is in violation of a provision in the Constitution designed for the protection of private property. The statute is assumed to be valid, until some one complains whose rights it invades."

In Brown v. Ry. Co., 79 Fed. 176, a statute of Indiana relating to railway corporations providing

"that a citizen of the State shall have a lien upon all the personal property of said corporations, to the amount of $100, for all debts originally contracted within this State; which, after said lien of the State, shall take precedence of all other debts, demands, judgments or decrees, liens or mortgages against such corporation," was under exposition. Under that statute certain citizens of the State of Indiana filed an intervening petition claiming $100 for services rendered the railway company prior to the appointment of the receiver. The receiver of the railway company, holding appointment in the principal case, defended on the ground that the statute was unconstitutional in that it discriminated against citizens of other States. In deciding the point BAKER, J., said: "The precise constitutional objection is not, and cannot be, that the Legislature is not possessed of the power to provide for the payment of all small debts of the corporation by giving them a preference and priority over liens and mortgages subsequently originating, for such power is undoubted. The objection must be that the statute in question is unconstitutional because it limits the right to *citizens of this State*, and to debts originally contracted therein, and thus discriminates injuriously against the citizens of other States. If it should be granted that non-residents of this State have equal constitutional rights in respect to enforcing the collection of small debts with the citizens of this State, it might follow that as to those who were injuriously affected, or as to those against whom the statute discriminates, it would be invalid, while as to those to whom it assumes to grant a special privilege it would be valid. When a non-resident of the State assails the constitutionality of the statute on the ground that it injuriously affects him, or on the ground that it denies him a privilege granted to the citizens of this State, it will be time to consider the constitutional question suggested. Courts will not listen to those who

Ordelheide v. Modern Brotherhood.

are not aggrieved by an invalid law. The railway company and its receiver are not aggrieved by the law. The only ground of complaint open to them is that the statute limits their liability within too narrow bounds. If it granted the right to sue for debts amounting to $100 to every one, it would confessedly be a valid enactment. Can the receiver object that the statute is unconstitutional because it is less burdensome to railway corporations than it might and ought to have been?'' (Here certain cases are cited). . . . ''These cases are agreeable to the principle that only those 'who are injuriously affected by an unconstitutional act will be heard to complain of it (citing other cases). The receiver, having admitted the rights of the complainants unless the statute in question should be held unconstitutional, is in no situation to object to the allowance of the demand of the intervening petitioners as a preferential claim.''

In Wellington et al. v. Petitioners, 16 Pick. 96, it was said in substance by no less an oracle of the law than Chief Justice SHAW, that it was quite clear that when an act of the Legislature was alleged to be void on the ground that it exceeded the limits of legislative power, and thus injuriously affected the rights of others, such act was to be deemed void only in respect to those particulars and as against those persons whose rights are thus affected and that it is only when some person attempts to resist its operation and calls in the aid of the judicial power to pronounce it void as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained.

In State v. Seebold, 192 Mo. 1. c. 730, the propositions announced by Judge SHAW, supra, are indorsed by this court. Jones v. Black, 48 Ala. 540, also is in point. It was there held in substance that an act of the Legislature will be assumed to be valid until some one whose rights are injuriously affected and specially

invaded complains.  To the same effect are Shehane v. Bailey, 110 Ala. 308; Com. v. Wright, 79 Ky. 22; State ex rel. Kellogg v. Currens, 111 Wis. 431; State v. Barr, 78 Vt. 97; In re O'Brien, 29 Mont. 530; Davidson v. Von Detten, 139 Cal. 467.

In Supervisors v. Stanley, 105 U. S. 305, the question came before the Supreme Court of the United States in the form of a charge of an unconstitutional discrimination in the method of assessing shares of stock in banks for taxation purposes.  The complaining shareholder in that case did not belong to the class affected by the law.  In speaking to the point, Mr. Justice MILLER delivered the opinion of the court and said (p. 311): "What is there to render it void as to a shareholder in a national bank, who owes no debts which he can deduct from the assessed value of his shares?  The denial of this right does not affect him.  He pays the same amount of tax that he would if the law gave him the right of deduction.  He would be in no better condition if the law expressly authorized him to make the deduction.  What legal interest has he in a question which only affects others?  Why should he invoke the protection of the act of Congress in a case where he has no rights to protect?  Is a court to sit and decide abstract questions of law in which the parties before it show no interest, and which, if decided either way, affect no right of theirs?"

The question was also up and ruled in State ex rel. McIntosh, 205 Mo. 1. c. 601-605.  In that case it is said (p. 605): "The sum of the matter is, not that his neighbor is hurt, but that a litigant himself must be hurt by the unconstitutional exercise of power before he may vex the judicial ear with complaints.  No one may demand judicial consideration of a question not singular to his individual rights of person or property as contradistinguished from his neighbor's.  'We cannot,' said the Supreme Court of Wisconsin (State ex rel. Kellogg v. Currens, 111 Wis. 1. c. 442), 'set aside

the acts of the Legislature at the suit of one who, suffering no wrong himself, merely assumes to champion the wrongs of others.' "

As defendant is in no way prejudiced by the statute in question it cannot complain of it as unconstitutional, because it discriminates against certain policyholders.

It will be time enough for us to consider and determine its constitutionality or unconstitutionality when a citizen of another State who claims to be discriminated against calls in the aid of the judicial powers in this State to pronounce it void, as to him, his property or his rights. The defendant does not claim that the Legislature had no power to put limitations on insurance contracts in this State. That power is unquestioned. The defendant claims that the citizens of other States are discriminated against by the statute. In doing so it does not speak for itself but speaks for policy-holders it claims are injuriously affected. It has no right to speak for them in the way of raising the constitutionality of the law. As put by BAKER, J., in the Brown case, supra: Could defendant object that the statute is unconstitutional because it is less burdensome to insurance companies than it might and ought to have been?

As defendant cannot raise the question, it is the same as if not raised at all. Since without it we have no jurisdiction, the case does not belong here. Let it be transferred to the St. Louis Court of Appeals. It is so ordered. All concur.