DANCIGER BROTHERS, Doing Business as HARVEST KING DISTILLING COMPANY, Respondents, v. THE AMERICAN EXPRESS COMPANY, Appellant.

Kansas City Court of Appeals, June 16, 1913.

1. CARRIERS OF GOODS: Express Companies: Conversion: Failure to Carry. The plaintiffs sued in conversion to recover from the defendant the value of a number of packages of intoxicating liquor. The liquor had been delivered to the defendant, the charges paid and the shipment made. But before the packages were delivered the State of Mississippi enacted a law which the defendant asserts made delivery impossible and defendant tendered the packages back to plaintiff with the

condition that the defendant be released from all liability for failure to deliver to the consignee. This the plaintiff declined to do. *Held*, that an action in conversion would lie for the value of the goods.

2. ———: ———: **Tender.** A tender to be valid must be unconditional, that is, it must not be coupled with a condition not clearly warranted by the contract.

3. ———: ———: **Offer to Return Goods.** A conditional offer of a common carrier to return goods not warranted by the contract of shipment cannot be regarded as a legal tender, but is, in effect, a refusal to return goods amounting, in law, to a wrongful conversion of them.

4. **CONSTITUTIONAL LAW: Invasion of Rights.** A litigant cannot attack the constitutionality of a statute that does not directly invade his rights.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback*, Judge.

Affirmed.

*Ashley & Gilbert* for appellant.

(1) Taking up the contentions in their inverse order for convenience, we find that the eighth amendment has been held by the United States Supreme Court not to apply to State but only to national legislation. Pervear v. Massachusetts, 5 Wall. 475, 18 L. Ed. 608; Brown v. New Jersey, 175 U. S. 172, 44 L. Ed. 119. (2) Plaintiffs' second contention is also untenable. The "privilege and immunities" secured by the Constitution of the United States do not include the right to sell intoxicating liquors. Bartemeyer v. Iowa, 18 Wall. 129, 21 L. Ed. 929; Crowley v. Christensen, 137 U. S. 86, 34 L. Ed. 620; Giozza v. Tiernan, 148 U. S. 657, 37 L. Ed. 599; Cronin v. Adams, 192 U. S. 108, 48 L. Ed. 365. (3) A common carrier may by special contract limit its liability except for negligence. In the absence of proof of fraud, imposition or deceit, the law presumes that the shipper has read his receipt and assented to its terms. Snider v. Ex-

press Co., 63 Mo. 376; Boling v. Railroad, 189 Mo. 237. (4) A shipper who himself fills out bills of lading at his own office before their signature by the carrier and who has previously shipped under similar bills of lading is charged with knowledge of their contents. Charnock v. Railroad, 113 Fed. 92; 194 U. S. 432, 48 L. Ed. 1057; Inman & Co. v. Air Line Railroad, 159 Fed. 960; Cau v. Railroad, 194 U. S. 427, 48 L. Ed. 1053. (5) "Impossible" means in the interpretation of contracts commercially impossible. Jackson v. Insurance Co., L. R. 10, C. P. 125; 44 L. J. C. P. 27; Jones v. Holm, L. R. 2, Ex. 335; 36 L. J. Ex. 192. (6) The impossibility which prevents the performance of a contract may be caused by a subsequent act of the law. Page on Contracts, sec. 1373. (7) Like every one else the carrier is bound both by duty and necessity to respect and yield to the paramount public authority in power at the place where his undertaking is to be performed. 61 N. Y. Supp. 115. (8) And where performance of a contract becomes unlawful nonperformance is excused. Sauner v. Ins. Co., 41 Mo. App. 480; Trammel v. Vaughn, 158 Mo. 223; Williford v. Phelan, 113 S. W. (Tenn.) 364. (9) The express company strictly performed its duties as common carrier in transporting the packages to their destination. It was excused and discharged from delivering them to the consignees named by reason of the passage of said act by the Mississippi Legislature imposing a privilege tax on persons or corporations maintaining places where liquor was deliverable C. O. D. . . . It would have been unlawful for it to have rebated its charge for transporting said packages to destination. Craddock & Co. v. Wells-Fargo Co., 125 S. W. 59. (10) The carrier's lien for freight entitles him to retain possession until the freight is paid. He will not be guilty of conversion in making payment of freight a condition of delivery. Mordecai v. Lindsay, 5 Wall. 481, 18 L. Ed. 486; 2 Hutchinson's Law of Car-

riers (2 Ed.), sec. 805. (11) Unless there is an absolute denial by carrier of a shipper's right to a return of goods, or unless the excuses for failure to return are unreasonable, there can be no conversion by the carrier, even on proof of demand by the shipper and a failure to return. Rubin v. Wells-Fargo Co., 85 N. Y. Supp. 1108. (12) The Mississippi act provides that express companies maintaining or operating offices in the State at which intoxicating liquors legally delivered upon payment of the purchase money therefor without payment of the privilege tax of $5000 for each office, shall pay to the State of Mississippi the sum of fifty dollars and to the county in which same is done fifty dollars for each day office is operated. "A penalty implies a prohibition." Roby v. West, 4 N. H. 287. (13) A license is a right granted by some competent authority to do an act which without such license would be illegal. Home Ins. Co. v. City of Augusta, 50 Ga. 530. (14) Where a license required by statute is for protection and to prevent improper persons acting in a particular capacity and not for revenue purposes only, the imposition of the penalty amounts to a positive prohibition of a contract made in violation of the statute. Talliaferro v. Moffett, 54 Ga. 150; Solomon v. Dreschler, 4 Minn. 278. (15) A statute may either expressly prohibit or enjoin an act, or it may impliedly prohibit or enjoin it, by affixing a penalty to the performance or omission thereof. It makes no difference whether the prohibition be expressed or implied. In either case a contract in violation of its provisions is void. Harris v. Runnels, 12 How. 78, 13 L. Ed. 901. (16) This allegation is characteristic of suits in conversion and cannot be rejected as surplusage. Wells v. Connable, 138 Mass. 513. (17) Frequently the inquiry whether the cause of action is *ex delicto* or *ex contractu* arises by reason of the general rule both at common law and under the codes, that a plaintiff alleging a cause of action *ex*

*delicto* cannot recover upon proof of a cause of action *ex contractu* or vice versa; his recovery must be *secundum allegata et probata*. 21 Ency. Pl. and Pr. 652 (2); Link v. Vaughn, 17 Mo. 585; Clement v. Yeates, 69 Mo. 623; Raming v. Street Railway, 157 Mo. 506. (18) Although a pleading contains all the averments necessary to authorize a recovery upon a contract, other prominent averments may describe a tort in a manner so logical and orderly as to compel the conclusion that the action is in tort; and averments showing the existence of a contractual relation between the plaintiff and the defendant are frequently regarded as mere inducement preliminary to the statement of the cause of action in tort. 21 Ency. Pl. and Pr. 657; Stanley v. Bircher, 78 Mo. 247. (19) This right of possession at the alleged date of conversion was an essential element of plaintiffs case and should have been proved to entitle plaintiffs to recover for a wrongful conversion. Bank v. Land Co., 152 Mo. 145; Bank v. Fisher, 55 Mo. App. 51; Schwald v. Brinjes, 139 Mo. App. 516.

*I. J. Ringolsky* for the respondents.

(1) The burden of exusing nondelivery and nonliability on part of defendant is upon the defendant. It follows, that the agreed statement of facts must be taken most strongly against the defendant, just as an affirmative pleading is to be taken most strongly against the pleader. Isenberg v. St. Louis & Vicksburg Anchor Lines, 13 Mo. App. 415-420; Labaree Co. v. Crossman, 100 App. Div. (N. Y.) 499, 92 N. Y. S. 565. (2) Ardent spirits, distilled liquors, ale and beer are subjects of exchange, barter and traffic like any other commodity in which the right of traffic exists and are so recognized by the usages of the commercial world. Lesisy v. Hardin, 135 U. S. 100-110; American Ex. Co. v. Iowa, 196 U. S. 133, 143, 144, 145. (3)

Where a duty imposed by law is violated contrary to the terms of a contract, the injured party can elect to sue on the contract or in tort; where a duty imposed by law is violated, then the suit must be brought by the injured party in tort; and where one violates a duty imposed by contract and not by the law independent of the contract, then the party injured must sue on the contract only. Wernick v. Railroad, 131 Mo. App. 37; Trout v. Livery & Undertaking Co., 148 Mo. App. 621; Trout v. Livery & Undertaking Co., 148 Mo. App. 621-633; Scalpino v. Smith, 135 S. W. 1000-1003; Freeman & Martin v. City of St. Joseph, 136 Mo. App. 316.

JOHNSON, J.—Plaintiffs, who are partners doing business in Kansas City under the firm name of Harvest King Distilling Company, sued defendant Express Company to recover damages for the alleged wrongful conversion of 450 packages of intoxicating liquors of the total value of $1670.45 which plaintiff delivered to defendant in Kansas City for transportation to various points in the State of Mississippi. The outgoing charges were paid in advance and the packages were sent C. O. D. They were carried by defendant to the respective points of delivery but were not delivered to the consignees. Instead, defendant brought them back to Kansas City and made a conditional tender of them to plaintiffs. The tender was refused and plaintiffs filed this suit which, as stated, is bottomed on the theory of a wrongful conversion of the goods. The answer pleads defenses the nature of which will appear in our statement and discussion of the case. They all rest on the fact that after the shipments were received at Kansas City, but before they could be delivered in Mississippi, a law was enacted in that State which defendant contends made the delivery of the goods impossible. The constitutionality of that law is attacked in the reply filed by plain-

tiffs. The cause was tried without the aid of a jury on an agreed statement of facts of which the following is the important part:

"III. The defendant at sundry times between April 1, 1906, and May 10, 1906, with knowledge of contents, received from plaintiffs at Kansas City, Missouri, certain packages of intoxicating liquor described in the list attached to plaintiffs' petition on the dates therein named, addressed to consignees at various places within the State of Mississippi, and of the value stated in said petition, to-wit: $1670.45, and in consideration of the charges prepaid by the plaintiffs, appearing in said list, undertook to transport the same C. O. D. from Kansas City, Missouri, to said consignees at various points within the State of Mississippi. These shipments were made by plaintiffs on signed orders received from the consignees mentioned in said list.

"IV. That the agreement of transportation by and between plaintiffs and defendant was that defendant should transport said packages of intoxicating liquor from Kansas City to the different points within the State of Mississippi, named in the list attached to plaintiffs' petition and there hold the same for the consignees at destination for a period of thirty days unless the consignees, whose names appeared upon said packages, should sooner call for same and pay the purchase price therefor, in which event the defendant agreed to remit such sums as it received to plaintiffs less its regular charges for so doing. And in case any or all of said packages were not delivered and paid for within said period of thirty days, defendant agrees to return the same to plaintiffs at Kansas City, Missouri, the plaintiffs to pay the regular charges for returning said undelivered packages, if any, to them.

"V. That the regular and only receipt issued by the defendant to the plaintiffs and to other large shippers and used for these shipments contained, among other things, the following provisions printed thereon:

'This company is not to be held liable for any loss or damage except as *forwarders only,* nor for any loss, damage or delay, by the dangers of navigation, by the act of God or of the enemies of the Government, by the restraints of Government, strikes, mobs, riots, insurrections, pirates, or from or by reason of any of the hazards or dangers incident to a state of war.

'If any sum of money besides the charges for transportation is to be collected from the consignee on delivery of the said property, and the same is not paid, or if in any case the consignee cannot be found or refuses to receive such property, or for any other reason it cannot be delivered, the shipper agrees that this company may return said property to him subject to the conditions of this receipt, and that he will pay all charges for transportation, and that the liability of this company for such property while in its possession for the purpose of making such collection, shall be that of warehousemen only.'

"That said receipts, in blank to be filled in by the shipper, were furnished by defendant to plaintiffs in quantities and kept on hand by plaintiffs to be used whenever they made shipments. That when a shipment was to be made plaintiffs filled out the blanks in said receipts and defendant, on presentation, signed the same. That this course of business had been in practice for a long period. That all receipts issued by defendant upon which C. O. D. shipments were made contained the provisions aforesaid.

"VI. That after defendant received from plaintiffs said packages of what is commonly known as C. D. intoxicating liquor, and received payment of its

outgoing charges, and had carried the same into the State of Mississippi, and before it had delivered the same to said consignees, the Legislature of Mississippi enacted a law, which was duly approved by the Governor of said State and went into effect May 1, 1906. Said law is now section 3810 of the Code of Mississippi, 1906, chapter 114, page 1057, and is entitled "Privileged Taxes,' and is as follows:

'On each express company transporting freight or passengers from one point to another in this State $500.

'And two dollars per mile on all first class railroad track in this State over which the business is operated and one dollar per mile on all second, third or fourth class railroad tracks in this State over which the business is operated.

'That every person or corporation that shall maintain or operate any office or place of business in this State, at which intoxicating liquors legally deliverable, are delivered upon the payment of purchase money therefor, shall pay annually, for each of said office or offices, or place or places of business, the sum of $5000.

'That the maintaining or operating of such office or offices as above mentioned, without payment of the privilege tax above provided, shall subject the person or corporation so operating or maintaining such office or place of business to pay the State of Mississippi the sum of fifty dollars, and to the county in which the same is done the sum of fifty dollars for each day such business or office may be maintained or operated and for each of said offices or place of business so operated; and the State and county may sue for and recover civilly, either jointly or separately, each the said sum, for each day that each of said offices or places of business may be maintained and operated without prepayment of the aforesaid privilege tax; and such civil suits may be commenced by attachment, without bond; provided nothing herein contained

shall validate any transaction, which, but for this act, would be illegal.'

"VII. That on or about May 1, 1906, defendant maintained or operated two hundred and fifty-two offices in the State of Mississippi, at which, under the terms of said statute, if defendant delivered intoxicating liquors upon the payment of the purchase money therefor, and complied with said law, it would have had to pay annually to the State of Mississippi, at the rate of $5000 per office, the sum of $1,260,000, and if it failed or refused to pay said privilege tax said law provided a penalty of fifty dollars for each day it maintained or operated each office as aforesaid, and a like sum of fifty dollars per day to each county in said State wherein such office was located, or a penalty of $100 per day for maintaining and operating each and every office in said State of Mississippi, without complying with said privilege tax law, or the sum of $25,200 per day for its said two hundred and fifty-two offices in said State.

"And defendant's entire gross revenue during the calendar year, 1905, from all sources in said State of Mississippi, including State and interstate business both forwarded and received, was $1,104,485.92, and its revenue during the year 1906, up to May 10, 1906, was at about the same ratio, and that by reason of the premises it did not pay said privilege tax.

"VIII. That defendant after the passage and going into effect of said law brought back all of said packages of liquor to Kansas City, Missouri, and tendered them to plaintiffs free of any return carriage charges, defendant claiming right to retain outgoing charges, and the tender being made providing on condition that plaintiffs would release said defendant from all liability or claim of damages on account of the nondelivery of said packages to consignees. This tender was

refused by plaintiffs, after which plaintiff brought this action."

The learned trial judge, at the request of plaintiffs, gave a declaration of law "that the statute of Mississippi pleaded in the answer is unconstitutional and void because the same is such a regulation of interstate commerce by a State as to be in contravention of the Constitution of the United States (par. 3, sec. 8, art. 1) and void for that reason, and that, therefore, the existence of such law is not a defense to this action," and rendered judgment for plaintiffs for the amount of their pleaded demand.

An appeal was allowed defendant to the Supreme Court but afterwards the cause was transferred to this court on the ground that plaintiffs were in no position in this action to raise the question of the constitutionality of the Mississippi statute since it levies a privilege tax only on express companies and not on liquor dealers and therefore does not directly infringe upon any right of the plaintiffs. The court say in the opinion: "The doctrine that a litigant cannot attack the constitutionality of a statute which does not directly invade his rights is sustained by the cases of Cunningham v. Current River Ry. Co., 165 Mo. 270;. Ex parte Lucas, 160 Mo. 221; State ex rel. v. Crandall v. McIntosh, 205 Mo. 589; Ordelheide v. Modern Brotherhood, 226 Mo. 203. . . . There was no constitutional question properly presented to the trial court, and having no jurisdiction of the appeal on any ground, the cause should be transferred to the Kansas City Court of Appeals." [152 S. W. 302, 247 Mo. 209.]

Following this decision we begin our consideration of the case from the viewpoint that the Mississippi statute is not an attempted interference with the authority of the national Government to regulate commerce among the several States of the Union, but is a.

valid exercise of authority vested by law in the legislative body of that State. We find that the proper disposition of this case does not require us to go into the subjects of whether the statute should be regarded as a revenue measure or as a police regulation; of its effect on existing transportation contracts or whether it should be regarded as constituting such "a restraint of government" within the meaning of that term as used in the shipping contracts as to afford defendant a legal excuse for its failure to deliver the shipments in accordance with the terms of the contracts. We are willing, arguendo, to adopt the view of defendant on all of these subjects without suggesting an opinion upon them. Taking defendant on the ground of its own selection and, assuming that its refusal to deliver the shipments in Mississippi was compelled by law and did not constitute a breach of the shipping contracts, we shall pass to the consideration of the nature of the duty the contracts imposed on defendant in such contingencies and then to the question of whether or not that duty was properly performed. The clear intention of the parties as expressed in the contracts was that, if, for any reason, inclusive of that of restraint of government, the goods could not be delivered to the consignees, defendant should return them to plaintiffs at their cost for the return carriage. Defendant so construed the contracts and returned the goods to Kansas City and after their arrival offered to deliver them to plaintiffs free from return charges but on condition that plaintiffs "would release defendant from all liability or claim of damages on account of the nondelivery of said packages to consignees." This condition was entirely outside the scope of the rights the contracts purported to reserve to defendant and the determinative question in the case is whether the tender actually made by defendant was a sufficient performance of its contrac-

tual duty to return the goods to plaintiffs at Kansas City.

The rule is well settled that a tender to be valid must be unconditional, i. e., must not be coupled with a condition not clearly warranted by the contract. [38 Cyc. 154; 2 Greenleaf (16 Ed.), sec. 605; Kitchen v. Clark, 1 Mo. App. 430; Wood v. Hitchcock, 20 Wend. 47; Thayer v. Brackett, 12 Mass. 450; Hepburn v. Auld, 5 U. S. 321; Ins. Co. v. Allen, 80 Ala. 571.]

A party to a contract must perform or tender performance of the duties it puts upon him, without protest, without imposing terms or conditions and without attempting to force the other party to agree in advance that his proffered performance shall be treated, if ac cepted, as a full discharge of his liability. The tender must be absolute and the authorities cited unite in saying that if it is coupled with the condition that the tenderee shall give a release or acquittance it is not a lawful tender. Plaintiffs had the right, if they chose, to litigate the question of whether or not defendant had breached the contracts in bringing the goods back to Kansas City and defendant was without legal justification in attempting to deprive them of that right. [Wood v. Hitchcock, supra.]

The offer to return cannot be regarded as a legal tender but in effect it was a refusal to return the goods amounting, in law, to a wrongful conversion of them. Plaintiff's right to the return of the goods was founded in contract but the breach of the contract we have discussed was a wrongful act for which an action in conversion would lie.

The judgment is affirmed. All concur.