KINGSHIGHWAY PRESBYTERIAN CHURCH, Appellant, v. SUN REALTY
COMPANY and NATIONAL REFINING COMPANY.—24 S. W. (2d)
108.

Division One, February 3, 1930.

*Benjamin J. Klene* and *A. Lowell Morris* for respondent.

*Wm. J. Becker* and *George E. Mix* for respondents.

FRANK, J.—Action in equity whereby plaintiffs seek to enjoin defendants from erecting an automobile gasoline filling station on premises described in the petition, and to compel the removal of any such filling station or part thereof as defendants may erect during the pendency of this action. The trial resulted in a judgment dismissing plaintiffs' bill, and Kingshighway Presbyterian Church appealed.

At the oral argument of the case, the question of our jurisdiction was suggested to counsel. In a reply brief thereafter filed, appellant claims that we have jurisdiction, (1) because defendants' answer alleged damages in the sum of $10,000 and prayed judgment for that amount; and, (2) because of a constitutional question raised by defendant National Refining Company's answer.

Appellate jurisdiction of this court on the ground of the amount in dispute, attaches when it appears from the records of the trial court that an amount in excess of $7,500 is involved. The record in this case shows that no amount of money is involved in this controversy.

While the answer claims damages in the sum of $10,000, no evidence of the alleged damages was offered and the record shows that the case was presented by both parties on the theory that this claim was not an issue in the case. In other words, the manner in which the case was tried indicates that defendant abandoned his claims for damages which was in effect a withdrawal of the same. Evidently the trial court so regarded it, because the judgment makes no disposition of defendant's claim for damages, but disposes of the case by dismissing plaintiffs' bill. Defendant makes no complaint of the court's failure to dispose of its alleged claim for damages, and so far as the record shows took no steps to have such claim adjudicated. If the claim was abandoned, it was not an issue in the case, the trial court was warranted in so treating it, and an adjudication thereof was not necessary.

A somewhat similar question was before the Kansas City Court of Appeals in Mitchell v. Violette, 221 S. W. 777, whereat the court said:

"There was no error in plaintiff's Instruction No. 3, which told the jury that defendant's counterclaim had been dismissed. From an examination of the entire record, it is apparent that defendant had abandoned his counterclaim, which substantially amounted to a withdrawal of same."

Where, as here, parties litigant invoke the jurisdiction of this court on the ground that the amount sued for is in excess of $7,500, we will look beyond the pleadings and examine the entire record, if necessary, in order to determine what amount is actually in dispute. "Frequently the amount in dispute is materially affected by eliminating items and elements at the trial, and the record shows this. Would it not be an act sounding to folly for us to say that, for the purpose of jurisdiction on appeal, we must continue to consider such eliminated matter? . . . So, in Phoenix Power Mfg. Co. v. Railroad, 196 Mo. 663, 94 S. W. 235, it was held that we would look into the whole record far enough to see if a real and not a mere colorable Federal question was involved." [Vanderberg v. Gas Co., 199 Mo. 455, 460, 97 S. W. 908.]

Looking beyond the answer which claims damages in the sum of $10,000, an examination of the record shows that defendant completely abandoned his claim for damages in the trial court. Neither the parties nor the court treated this claim as an issue in the case. Not having litigated the question of damages in the trial court, it cannot be injected into the case on appeal for the purpose of giving this court jurisdiction.

We will next state the facts necessary to be considered in determining the claim that there is a constitutional question in the case.

On April 11, 1924, respondent Sun Realty Company, was the owner of the lot on which the filling station was erected, and on that day contracted to sell the lot to respondent, National Refining Company, on condition that if the National Refining Company should be unable to secure a permit to erect, maintain and operate a gasoline-filling station on said lot, the contract of sale was to be null and void. Immediately thereafter the Sun Realty Company applied to the authorities of the city for permits to install three one-thousand-gallon gasoline tanks, and to erect an office building on said lot. In July, 1924, a hearing was had on said applications, and after holding the matter under advisement for several months the city refused to grant the permits. Thereafter a suit in mandamus was brought by the Sun Realty Company in the Circuit Court of the City of St. Louis against the proper city officers to compel the issuance of the permits. A peremptory writ of mandamus was awarded on December 11, 1924, commanding the issuance of said permits, and on the same day, December 11, 1924, the permits were issued to the Sun Realty Company. During the pendency of the mandamus suit, and

before the writ was issued, the city, on November 12, 1924, passed and approved ordinance No. 33448, which became effective on December 12, 1924. The pertinent part of this ordinance reads as follows:

"In all automobile filling stations the tank, whether it be installed above ground or below ground, shall be located at a distance of at least thirty feet from the nearest edge of the lot upon which the filling station is located, and no building shall be permitted on such lot other than the filling station. No automobile filling station shall be located, operated or maintained within two hundred and fifty feet of any school, school yard, church, theater or other place of public assembly, hospital, asylum or other charitable or public institution."

The evidence shows and it is not disputed that the filling station was located and is being maintained and operated within less than two hundred and fifty feet of the Kingshighway Presbyterian Church, The facts thus far stated show that the permits to erect the filling station were issued to respondent Sun Realty Company, on December 11, 1924, and the ordinance prohibiting the location of a filling station within two hundred and fifty feet of a church went into effect on December 12, 1924. Two permits were issued, one for the installation of the gasoline tanks under ground, the other for the construction of the office building. Defendant claims that it actually installed the tanks before the ordinance became effective and for that reason acquired a vested right to maintain them. The record does not support this claim. The evidence shows that immediately after the permits were issued on December 11, 1924, defendant's workmen went to the lot, arriving there about 4:30 o'clock in the afternoon and worked until late at night doing excavating work preparatory to installing the tanks, but there is no evidence that the tanks were installed on that day. Work on the station continued thereafter and it was completed in February or March. Defendant makes the further claim that the permit gave it a right to erect the filling station, and that contracts were let, material purchased and laborers employed for the building of said station and the construction thereof was actually begun before the ordinance became effective, and for these reasons it acquired a vested right to build and maintain the station. There is evidence that contracts for labor and material were made, but there is no evidence that any work was done except to haul some material to the lot and do some excavating in the afternoon of the day before the ordinance went into effect.

The answer pleads that the ordinance is an *ex post facto* law as to defendant. It is further alleged, in substance, that to compel defendant to cease the operation of the filling station and remove it

from its location would contravene Article II, Section 15, of the Constitution of the State of Missouri; Article I, Section 14, of the Constitution of the United States, and Section I of Article XIV of the Amendments to the Constitution of the United States, and would destroy vested rights of defendant acquired before the effective date of the ordinance.

It is somewhat difficult to determine from defendant's answer whether the pleader intended to challenge the constitutionality of the ordinance on its face, or assert that the application of the ordinance to the facts of this case would render it retroactive as to defendant, and thus destroy vested rights acquired before the effective date of the ordinance. For present purposes it is immaterial which claim is made, because defendant is not in a position to raise either question. It did not build the station or acquire a vested right to do so before the effective date of the ordinance. Every citizen holds his property subject to the valid exercise of the police power, therefore the granting of the permits to build the station gave defendant no vested right. [State v. Christopher, 298 S. W. 720, 726; 43 C. J. p. 349, sec. 380; Brett v. Building Commissioner of Brookline, 250 Mass. 73, 80.] The facts that defendant had purchased material, made contracts for the erection of the station and actually commenced work on the lot on the afternoon of the day before the effective date of the ordinance, gave defendant no vested right.

A similar situation was before the Supreme Court of Massachusetts in Salem v. Maynes, 123 Mass. 372. In that case before there was any ordinance on the subject, defendants had begun work on the cellar, had made a contract for the erection of a proposed wooden building and had bought and prepared lumber to carry out that contract. Thereafter an ordinance was passed which defined the height of wooden buildings in that locality, the area and distance of such buildings from any other wooden building. The proposed building did not comply with the ordinance. In a suit for the removal of the building it was held that plaintiff was entitled to a decree. In the disposition of that case the court said:

"All contracts between individuals, and even charters granted by the State, are subject to the exercise of this (the police) power. . . . The facts that, before the passage of the ordinance, the defendant had begun work on the cellar upon the site of the proposed building, and had made a contract between themselves for the erection of the building, and had bought and prepared lumber to carry out the contract, does not exempt them from the operation of the ordinance." [Ayer v. Commissioners on Height of Buildings in Boston, 242 Mass. 30; Opinion of the Justices, 234 Mass. 597, and cases reviewed at pages 608-611.]

516

Litigants will not be permitted to attack the constitutionality of a statute or ordinance which does not impinge upon their existing vested rights. The ordinance, if retroactive, would not disturb any vested right of defendant, because on the effective date of the ordinance it had no vested right to either build or operate the filling station at the place in question, and for that reason is not in a position to challenge the constitutionality of the ordinance on the ground that it invades vested rights. [Ordelheide v. Modern Brotherhood, 226 Mo. 203, 125 S. W. 1105; Green County v. Lydy, 263 Mo. 77, 98, 172 S. W. 376; Gould v. Railroad, 315 Mo. 713, 730, 290 S. W. 135.] Statutes or ordinances are assumed to be valid until some one whose rights are injuriously affected complains. [Ordelheide v. Modern Brotherhood, supra, 209, 210.] Since defendant is not in a position to raise the constitutionality of the ordinance, it is the same as if not raised at all.

For the reasons stated, this court has no jurisdiction and the case should be transferred to the St. Louis Court of Appeals. It is so ordered. All concur.