18763

PALMETTO PETROLEUM, INC., and Tommy C. White, Appellants, v. The CITY OF MULLINS, Mayor J. L. Hardwick, Jr., and Aldermen James W. Daniel, Howard M. Cook, Louise Lamb, Frank Jones, J. Vermil Shepard, and Thomas C. Smith and Julius Clifton Thomas, Respondents.

(159 S. E. (2d) 854)

*Messrs. Zeigler & Townsend,* of Florence, *for Appellants,*

*Raymond Pridgen, Esq.* of Mullins, *for Respondents,*

February 27, 1968.

LITTLEJOHN, Justice.

In this action Palmetto Petroleum, Inc., seeks an order of the court declaring that it has the right to construct an auto service station on a lot of land which it bought from

Tommy C. White in the City of Mullins. The questions before the lower court, and now before this court are:

1. Did the permit to build a service station procured from the City of Mullins by Tommy C. White, from whom Palmetto Petroleum, Inc., bought the land, inure to the benefit of the grantee? and,

2. Does the subsequent rezoning ordinance destroy a previously issued building permit?

The lower court decided the case on the basis of the first question only and we too are of the opinion that the decision should turn on that one question.

The facts as stated in the order of Judge Baker are as follows:

"On January 21, 1966, the City of Mullins, through its Building Inspector, issued to Tommy C. White a building permit for the erection and construction of an auto service station on real estate owned by Tommy C. White and located at the intersection of Park Street and Proctor Street. Mr. White did not exercise the privilege conferred by the permit but on August 20, 1966, sold this property to Palmetto Petroleum, Inc. On September 15, 1966 Palmetto Petroleum entered into a contract with Tommy C. White and William White for the construction of a service station on the premises for the sum of $15,000.00. The contractors, Messrs. White and White, agreed to furnish all materials and labor for the construction.

"On October 13, 1966, the City of Mullins, under the authority of Sections 47-1001 through 47-1018 of the 1962 Code of Laws, adopted a Zoning and Division Ordinance. Due notice of the intended adoption of the ordinance was given as provided by Section 47-1004. Under this ordinance the property involved, after October 13, 1966, was and is in A-1 residential District wherein service stations are not permitted.

"Tommy C. White after the issuance of the permit did not commence construction of the station nor is there any

showing of expense for materials, labor, construction or preparation for construction. Prior to the issuance of the permit Mr. White, on January 7, 1966, paid to the City the sum of $17.00 for a sewer tap and inspection fee. After Palmetto Petroleum purchased the property construction was not started upon the premises, but there is evidence that Palmetto Petroleum incurred obligations of about $400.00 for plans and specifications for the intended service station."

It is conceded that Palmetto Petroleum, Inc., purchased the land and accepted a deed without any contact with any person acting, or purporting to act, for the City of Mullins. Accordingly, the city did not mislead the new owner of the property. The new owner erroneously assumed it could proceed under the permit issued to White. Under the circumstance we hold that the permit to build a service station was not assignable and did not transfer with the land to the grantee.

In *Pendleton v. City of Columbia,* 209 S. C. 394, 40 S. E. (2d) 499, we held that after a permit was acted upon in a substantial way by the person to whom it was granted, it became a vested property right. Here, the permittee (Mr. White) had done nothing and made no expenditures between the date of the granting of the permit and the date of the sale, and so the case before us is easily distinguishable from the *Pendleton case.*

We find no South Carolina case dealing with facts similar to those before the court. The general law is found in 62 C. J. S. Municipal Corporations § 227. The Supreme Court of Massachusetts in the case of *Simon v. Meyer,* 261 Mass. 178, 158 N. E. 537, held that the owner of land could not convey a building permit to erect a public garage to his successor in title:

"The permit or license was moreover the grant of a personal privilege, even if it was connected with the premises, an assignment of which, unless sanctioned by the proper authorities, would pass nothing to the assignee."

The same court, in *Hanley v. Cook*, 245 Mass. 563, 139 N. E. 654, ruled that a permit to build a garage was not assignable, saying:

"In the case at bar the assignment of the permit was ineffectual to transfer to the grantee of the estate the right granted Cook, because the bare right was nonassignable, and the conveyance of the estate did not transfer the right in Cook, because that right through its exercise had not attached to and become an incident of the land conveyed."

The cases generally hold that there is no vested property right in a mere building permit. *Graham Corporation v. Board of Zoning Appeals of Town of Greenwich,* 140 Conn. 1, 97 A. (2d) 564; *Bruning Bros., Inc. v. Mayor and City Council of Baltimore,* 199 Md. 602, 87 A. (2d) 589; *Kingshighway Presbyterian Church v. Sun Realty Co.,* 324 Mo. 510, 24 S. W. (2d) 108.

The rule is stated in *McQuillin on Municipal Corporations* Volume 9, Paragraph 26.215, Municipal Licenses and Permits:

"The general rule is that, although *a building permit does not in itself confer or alter vested rights,* investment, expenditures, or work under it may give rise to property rights entitled to protection of the law as such."

Counsel for appellant cites the case of *Nuckles v. Allen,* S. C., 156 S. E. (2d) 633, decided by this court since the order of the lower court here on appeal. We think, however, that the *Nuckles case* does not stand for the proposition that a mere building permit becomes a vested assignable property right from the time of its issuance. In the *Nuckles case* McLeod contracted to buy the land conditioned upon approval for motel purposes by the municipal Zoning Board of Adjustment. Such approval was given by the Board with full understanding that the purchase would not be made if the zoning variance were denied. McLeod took title relying on the board's action. Thereafter, McLeod entered into a sales agreement with Nuckles on the condition that Nuckles be able to procure a building permit for a motel. The permit

was applied for, and actually issued by the city's representatives to Nuckles, who had equitable title to the land. Thereafter, the variance upon which McLeod had relied was rescinded and the permit which Nuckles was granted was revoked without cause and without a showing of public necessity. This court held that both the grantor, McLeod, and the prospective grantee, Nuckles, were entitled to relief. The position of the aggrieved parties in the *Nuckles case* is not comparable to the position of Palmetto Petroleum, Inc. in this case, and accordingly our previous ruling is not controlling.

Appellants lastly argue that Palmetto Petroleum substantially changed its position in reliance on the validity of the building permit. Since the building permit was never more than a personal privilege of Tommy C. White, Palmetto Petroleum had no right to rely on it. Tommy C. White had a personal privilege to build the service station on the lot. When 'he sold the property under the circumstances stated without exercising it, the building permit became a nullity.

Since Palmetto Petroleum, Inc. had no building permit at the time the zoning law was enacted the second question raised on the appeal becomes academic.

The order of the lower court is

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.