SOLOMON G. KITCHEN, Respondent, v. CHARLES B. CLARK, Appellant.

### March 9, 1876.

1. K. employed C. to make certain plans and specifications, but refused to receive or pay for them when finished, whereupon C. sued and obtained judgment for a sum smaller than that which he testified, at the trial, they were worth; K. then demanded the plans and specifications, which C. refused to deliver, whereupon K. satisfied C.'s judgment, and instituted this suit, in which he recovered judgment for the value as formerly sworn to by C. *Held*, that K. was restricted, in damages for the conversion, to the value as adjudicated in the former suit; upon respondent's remitting the excess, final judgment is rendered in his favor for the amount of the adjudicated value, with interest from the commencement of this suit.

2. A tender, to be effectual, must be unconditional.

APPEAL from St. Louis Circuit Court.

*Reversed and judgment.*

*Lee & Adams*, for appellant, cited : Clark v. Kitchen, 52 Mo. 316 ; Burt v. Dewey, 40 N. Y. 283 ; Curtis v. Groat, 6 Johns. 168 ; Osterhout v. Roberts, 8 Cow. 43 ; Sanderson v. Coldwell, 2 Aik. (Vt.) 203 ; Jones v. McNeil, 2 Bailey (S. C.), 466 ; Sharp v. Gray, 5 B. Mon. (Ky.) 4 ; Greenl. on Ev. (2d ed.) 225 ; Stark v. Kenan, Exr., 11 Ala. 818 ; Pars. on Con. (2d. ed.) 644 ; Breed v. Hurd, 6 Pick. (Mass.) 356 ; Hike v. Clark, 55 Mo. 105 ; Campbell *et al.* v. Johnson, 44 Mo. 247 ; Speck v. Riggins, 40 Mo. 405 ; Shephard v. Hampton, 3 Wheat. 200 ; Logan v. Small, 43 Mo. 254.

*Pope & McGinnis*, for respondent, cited : 1 Wag. Stat. 347, sec. 34 ; Routhel v. Dezetter, 43 Mo. 145 ; Clark v. Moody, 17 Mass. 248 ; Bank of Missouri v. Benoist, 10 Mo. 521 ; Carter v. Feland, 17 Mo. 383.

GANTT, P. J., delivered the opinion of the court.

The petition on which this cause was tried was filed at the June term, 1873. It stated that, in 1871, defendant, for value, promised to make and deliver to plaintiff a certain plan with detail drawings and specifications ; that defendant made the plan and plaintiff paid its value, viz., $338.50, but defendant refused to deliver it ; that it was worth $555, and for that sum plaintiff asked judgment. *Also*, that for the further sum of $156.50 defendant promised and agreed to make a certain other plan for plaintiff ; that he made it and was paid for it, but has refused to deliver it ; that it was worth $260, and for that sum plaintiff prayed judgment. *Also*, that defendant agreed and promised to make for plaintiff, for the further sum of $180, a certain other plan, etc. ; that defendant made it, and was paid for it by plaintiff, but has refused to deliver it, wherefore plaintiff asks judgment for its value, which is alleged to be $295 and interest. *Also*, that defendant agreed to make for plaintiff a certain other plan and specifications, and superintend the building of a dwelling-house for plaintiff *in or near* the city of St.

Louis, the cost of which was not to exceed $10,000 ; that. plaintiff has done everything required of him, but defendant has neglected everything to be done by him, occasioning great loss, inconvenience, and discomfort to plaintiff, who claims damages for the breach of this contract in the sum of $5,000.

The answer of defendant denied that he made or violated any such contracts as are set forth in the petition. The answer is almost a reproduction of the petition in negative terms.

At the trial the fourth cause of action was abandoned, and the matter therein stated was formally struck from the petition. A jury were sworn, who returned a verdict for the plaintiff for $538.50 on the first count, for $356.50 for the second count, and $380 for the third count. Judgment was given accordingly.

By the bill of exceptions it appeared that, at the trial of the cause, Kitchen offered in evidence the record of a former suit, when Clark (now defendant) was plaintiff and Kitchen (now plaintiff) was defendant. This suit was begun in December, 1871. It was for the sum of $1,106.18, alleged to be the value of certain plans and specifications made by Clark for Kitchen and not paid for. Kitchen denied all the allegations of that petition, and there was a trial, and judgment for plaintiff for the sum of $675. Plaintiff (Clark) testified in that cause that he made the plans sued for ; that he charged Kitchen, and told him that he charged him, 5 per cent. for making plans, drawings, detail plans, and superintending the work ; for the first plan, the work to cost $18,500, the charge was 8 per cent ; for the second plan, it was 2 per cent. on $12,256 ; and for the third plan, 2 per cent. on the lowest estimate, $14,000. Kitchen told him to send the bills to his office. Clark did this, and Kitchen refused to pay.

Mitchell, a witness for Clark, testified that the usual charge for general design and specifications was 1 1-2 per

cent., and 1 per cent. for detail drawings. The bills shown to witness were approved by him. He said that in buildings of first class the prices were 3 per cent. on buildings to cost from $15,000 to $30,000, and the charge of 3 per cent. on $18,500 was fair.

(By this it would seem that the bill of exceptions is wrong in making Clark say that he charged 8 per cent. on $18,500. It does say this, however, very plainly.)

This was the evidence of plaintiff. Defendant, Kitchen, testified at length respecting the contract, but what he said is immaterial here. The record was read in evidence.

Mr. Davis testified for Kitchen, in this case, that at the former trial Clark had testified that he made the plans then sued on for Kitchen, under the contract therein referred to ; that the prices therefor charged were reasonable, and they were worth $1,106.18.

Kitchen then proved that before this suit was brought he demanded these plans from defendant, who refused to deliver them. This was after the determination of the former suit, but before payment had been made of the judgment there had. There was a doubt whether Kitchen's attorney offered to pay the judgment if the plans were delivered ; but it was admitted at the trial that it had been fully paid before this suit was brought.

The following instructions were given for Kitchen :

1. "The court instructs the jury that an offer to pay need not be accompanied by the actual production of the money ; but if the money is declined before it is produced, the tender is complete on the refusal to receive it."

2. "The court instructs the jury that the effect of the verdict and judgment in the case of *Clark* v. *Kitchen*, and payment thereof by plaintiff before the filing of the petition in this case, was to vest in plaintiff the title to the plans, specifications, and detail drawings described in the first-mentioned suit, and entitled plaintiff to the possession of them ; and if the said plans, specifications, and detail drawings are

the same that are described in the petition in this cause, and plaintiff demanded them from defendant and offered to pay, and has paid, the judgment in the case of *Clark* v. *Kitchen*, and that all this was done before the commencement of this suit, they must find for plaintiff.''

We have somewhat shortened the language of the second instruction, but have preserved its sense and meaning.

The case is, shortly, this : Clark sued Kitchen to recover damages for Kitchen's refusal to pay for making certain plans, and recovered judgment for $675. Then Kitchen sued Clark for the plans themselves, which Clark refused to give up, and recovered judgment for $1,275. In the first case, $675 was declared to be what Clark was entitled to receive for making the plans. In the second case, $1,275 was what he was declared to be liable to pay for detaining them. One of the reasons for the motion for a new trial was that the damages were excessive.

1. No circumstances of aggravation were shown entitling the plaintiff, Kitchen, to damages, except such as naturally and legally resulted from the refusal of defendant, Clark, to deliver to him certain enumerated plans. There is no doubt that the recovery in the action brought by Clark against Kitchen, and the satisfaction of the judgment, vested in Kitchen the title to the things for making which he was sued. It was alleged that the price of making them was $1,106.18. It appeared in evidence that, at the trial, Clark had testified that they were worth that sum. The jury, however, gave him only $675. But the plans, by the payment of this sum, became the property of Kitchen. 2 Kent's Com. 388, and notes; *Livingston* v. *Bishop*, 1 Johns. 290 ; 1 Greenl. on Ev., sec. 533. It would be easy to multiply the cases cited.

2. When the suit was brought against Clark, he had received full payment of this judgment; but this was not the case when the demand and refusal occurred. There was no tender of payment when this demand was made—

only a declaration of readiness to pay when delivery was made. This will not answer. There must be an *unconditional* offer to pay what is due. If the person to whom it is payable, when informed of the intention of the person proposing to pay, refuses to receive it at all, the party having it to pay need not go through the idle form of counting it out. But, first of all, there must be a clear and plain offer to pay, without exacting anything in return, in order to constitute a tender. 1 Chit. Gen. Pr. 508, and notes, and notes to 3 Shars. Bla. Com. 303. There was no offer of that kind here. The strongest expression used by Mr. McGinniss, the witness, falls much short of it. To the question by the court, "Was payment made then?" he replied, "The payment was not made at that time. At the time I called there, payment had not then been made for the plans. I offered payment on their delivery to me. He said, 'You cannot get them; go to my lawyer.' "

This is all that was said on the subject of a tender, and, obviously, here was no tender. To offer money on condition of a receipt being given for it is enough to vitiate a tender; for which we refer to the authorities already cited. In the case at bar, the condition was one on which Clark not unnaturally wished to consult his legal adviser; though we do not think that his legal adviser should have hesitated as to the answer to be given when consulted.

At a later period, and before the commencement of this suit, Kitchen appears to have paid the amount of this judgment. If, after that, demand had been made for the plans, and Clark had refused them, that refusal would have been evidence of a conversion. It was the satisfaction of the judgment which transferred the property in these plans to Kitchen; but nothing short of that had this effect. See 2 Kent's Com. 388, and notes.

We are, therefore, of opinion that there was error in the first instruction given by the court. It invited the jury to

indulge an hypothesis not warranted by the evidence. There was nothing before them to which it was applicable.

3. The second instruction would be unobjectionable if there had been any evidence of a demand of the plans after the title of Kitchen to them had become complete by the satisfaction of the judgment obtained for their value. But there was nothing of this kind, and, evidently, the court regarded the demand made by Mr. McGinniss, and the refusal of it, as evidence of conversion. For the reasons already given, this was error.

4. If there was a conversion of the plans by Clark, he was chargeable with their value, and interest by way of damages. Their value had been ascertained to be $675 in an action between the same parties. What Clark said on this subject, as a witness at that trial, even if admissible at all, can certainly not outweigh the determination of the fact in issue by the jury which heard both him and Kitchen. If the record of the judgment was legal evidence of the value of the plans, the testimony of the witnesses then examined was not admissible, either to fortify or weaken the conclusion to which that judgment pointed. It is only on the theory that Clark has obtained satisfaction for his plans—that, by means of the judgment and execution, the value of them has been paid to him by Kitchen—that the title to the plans passes to Kitchen. 2 Kent's Com. 388, and other authorities cited above. We do not see the propriety of asking for anything more than this value thus ascertained, with interest, unless it had appeared that this value had undergone a change since the judgment in favor of Clark; and no evidence of that kind was offered.

As we view the matter, the jury were no more warranted, in this case, in giving $1,275 damages in December, 1873, for the conversion of plans which in May, 1872, had been ascertained to be worth $675, than if the conversion had been of a promissory note for $675 and interest, due in

May, 1872. The damages were excessive; and for this reason the verdict should have been set aside or modified. As above shown, however, we think there was no evidence of a conversion, the only evidence having that tendency being that of a demand and refusal before the accrual of Kitchen's title.

All the judges concurring, the judgment will be reversed and the cause remanded.

GANTT, P. J., delivered the opinion of the court on motion for rehearing.

The respondent asks for a rehearing on two grounds:

1. That the court overlooked section 34, page 347, of Wagner's Statutes, and 43 Mo. 145 (*Raithel* v. *Dezetter*), construing that section.

2. That the court erred in treating as *res adjudicata* the ascertainment of the value of the plans by the former suit between the same parties.

1. As to the first point, we are of opinion that there is an error in the opinion of the court, as first written, to the extent of supposing that, as the pleadings stood, evidence of demand and refusal, or conversion, was necessary. No such evidence, we think, was given; but we also think that the counsel for respondent have shown that it was not necessary, due regard being had to the answer of the defendant, Clark, now appellant.

2. We remain of opinion that the judgment must be reversed for the reason stated in the original opinion; but the correction of the views at first entertained by us on the first point leaves the excessive damages the only erroneous feature of the record. The counsel for respondent, as we understand their proposal, are willing now to remit this excess. We think that if the jury had given Kitchen a verdict for $675, and interest from the commencement of the suit, the judgment must have been affirmed; and, consequently, that the remitting of all but so much as will be

equal to this amount will fulfill all the demands of justice. But all the costs incurred by Clark in this action, both in the Circuit Court, since December 13, 1875 (the date of the verdict), and in this court, must be borne by the respondent. These costs were incurred in the attempt to rectify an erroneous judgment. These terms being acquiesced in by the counsel for respondent, we give final judgment in this court accordingly. All the judges concur.