HENDERSON, *Appellant*, v. CASS COUNTY.

DIVISION ONE.

1. **Tender:** CONDITIONS INADMISSIBLE. A tender to be sufficient must be unconditional.

2. ———— : ————. The debtor cannot insist that the creditor shall admit that no more is due on the debt which is the subject of the tender than the amount tendered.

3. ———— : ————. A tender on condition that a protest made by the creditor shall be withdrawn is not a good tender.

4. **Plea of Tender.** A plea of tender, to be effective, must show that the debtor has always been willing and ready to pay the amount tendered from the date of the tender.

*Appeal from Bates Circuit Court.*—HON. D. A. DEARMOND, Judge.

REVERSED AND REMANDED.

*T. K. Skinker* for appellant.

(1) On the first of April, 1889, the plaintiff had the right to demand an exchange of his six-per-cent. bonds for the new fives at par, and was not bound either

Henderson v. Cass County.

to receive the money that was tendered for them, or to take the new fives at their market value. Sess. Acts, 1887, p. 26 ; Sess. Acts, 1889, p. 26 ; R. S. 1889, sec. 835; *Carpenter v. Hindman*, 32 Kan. 601 ; *Merrill v. Monticello*, 138 U. S. 673 ; *Lloyd v. Altoona*, 134 Pa. St. 545 ; The Century Dictionary, "Exchange ;" Webster's Dictionary, "Exchange ;" *Adams v. Helm*, 55 Mo. 468 ; *Moynahan v. Moore*, 77 Am. Dec. 476 (note). (2) Even if plaintiff was bound to accept money, there was no such tender as disables him to sue and recover in this action the full amount of his coupons, with interest and cost. *Kitchen v. Clark*, 1 Mo. App. 430 ; *Wood v. Hitchcock*, 20 Wend. 47 ; *Tompkins v. Batie*, 11 Neb. 147 ; Benjamin on Sales [4 Am. Ed. by Bennett] secs. 721–25 ; *Draper v. Hitt*, 43 Vt. 439 ; *Richardson v. Chemical Laboratory*, 9 Met. 42 ; *Thayer v. Brackett*, 12 Mass. 450 ; *Eastland v. Longshorn*, 1 Nott. & McC. 194 ; *Perkins v. Beck*, 4 Cranch, C. C. 68 ; *Latham v. Hartford*, 27 Kan. 249.

*John B. Henderson*, pro se.

*R. T. Railey*, *W. L. Jarrott* and *J. T. Burney* for respondent.

(1) Under the act of the legislature of 1887 (Sess. Acts, p. 26), the plaintiff had no right to demand an exchange of his old six-per-cent bonds for new five-per-cents, except upon the basis of the market value of such bonds. Sess. Acts, 1887, p. 26 ; Sess. Acts, 1889, p. 26 ; R. S. 1889, sec. 835 ; Rapalje & Lawrence's Law Dic., p. 475 ; *Elwell v. Chamberlin*, 31 N. Y. 624; *Com. v. Clark*, 14 Gray (Mass.) 372 ; *Gunter v. Leckey*, 30 Ala. 591; 7 Am. & Eng. Ency. of Law, p. 115; Const. of Mo., art. 2, sec. 15. (2) Defendant, under its contract in issuing its six-per-cent bonds, had the right to pay them off in full in money on April 1, 1890, and plaintiff was legally bound to accept such payment. (3) Defendant made a

legal and valid tender to plaintiff, on April 1, 1889, of all the money then due on the bonds held by him; and thereafter no further interest accumulated on such bond as against Cass county.  2 Parsons on Contracts [6 Ed.] p. 644; 2 Benjamin on Sales [Corbin's Am. Notes] pp. 933-5; *Bailey v. Buchanan Co.*, 6 L. R. A. 562; s. c., 115 N. Y. 297; *Adams v. Helm*, 55 Mo. 469; *Barthold v. Reyburn*, 37 Mo. 587.

BLACK, J.—Plaintiff was the owner of bonds to the amount of $37,700, being a part of a series of six-per-cent. compromise and funding bonds issued by the defendant county on the first of February, 1883.  The bonds were payable at the National Bank of Commerce in New York, twenty years after date.  They contained a stipulation to the effect that the county might, at its option, pay them and the accrued interest at any time after five years, that is to say, at any time after February 1, 1888.  This is a suit on seventy-one coupons detached from the bonds, representing the interest falling due on the first of February, 1890.

The defendant's answer is to the effect, that it gave due notice that the bonds and accrued interest would be paid on the first day of April, 1889; that no interest would be paid after that date, and that on that date defendant tendered to the plaintiff the full amount of the principal and also the interest then due upon the bonds, which the plaintiff declined to accept.  The defendant brought into court with its answer the interest accrued up to the first of April, 1889.

The trial court gave the instructions asked by the defendant, but refused those asked by the plaintiff, and thereupon the plaintiff took a nonsuit with leave.

No question whatever is made over the validity of the bonds.  The evidence shows that in 1889 the defendant county concluded to refund its outstanding bonded indebtedness, then payable at its option, under the act of March 30, 1887 (Acts of 1887, p. 26), by issuing a new

series of refunding bonds bearing interest at the rate of
five per cent. per annum.   With this end in view, the
county court made a contract with Coffin & Stanton,
brokers and bankers in New York, dated the twenty-
sixth of February, 1889, whereby the county sold to
them two hundred and fifty of the proposed new bonds
of the denomination of $1,000 each, to bear interest at
the rate of five per cent. per annum, for the considera-
tion of $252,600, being a premium of a little over one
per cent.   By this contract the county agreed to deliver
the bonds to Coffin & Stanton on or before April 1, 1889,
and the latter agreed to place the purchase price to the
credit of the county on their books and to take up and
redeem the old bonds by paying the face value thereof
and the accrued interest, and to pay all the expenses
incident to funding the old bonds.   This contract pro-
vides that holders of the old bonds shall have the right
to exchange them for new bonds at their market value,
while the new bonds are in the possession of the county
court.

On the ninth of March, 1889, the county court made
and published an order to the effect that the old bonds
and accrued interest would be paid at the National Bank
of Commerce, or at the banking house of Coffin & Stan-
ton in New York, on the first of April, 1889, and that
no interest would be paid after that date.   On the same
day the county court made and published another order
declaring the purpose of the county to redeem the old
bonds under the option given to it; and that the princi-
pal and interest would be paid at either of said banks
on and after the first of April, 1889.   The order also
states that old bonds may be exchanged at par for new
bonds at 105 by notifying the county court or Coffin &
Stanton, the privilege of exchanging to cease after April
1, 1889.   On the same day another order was made
directing the bonds to be prepared and signed.   The
bonds were signed not earlier than March 23, 1889.

On March 23, 1889, the plaintiff notified the county court, in writing, that he desired to exchange his old for new bonds, "as provided by law." On the first of April, 1889, the plaintiff, through the agency of a Mr. Betts, presented his old bonds to Coffin & Stanton in New York and demanded an exchange for new five-per-cent. bonds, dollar for dollar. Mr. Stanton declined to make the exchange on those terms, but offered to plaintiff's agent the new bonds at 103, which offer was refused. That was then about the market value of the new bonds. Stanton then offered to pay cash for the old bonds, and the plaintiff, through his agent, served a written protest and then offered to accept the money, but Stanton refused to pay it over until the protest was withdrawn, and this the plaintiff's agent declined to do, and so the matter ended.

From this history of this case, it will be seen that there was a spirited contest as to whether the plaintiff had the right to an even exchange of his old for new bonds. This right he claims as being given to him by the act under and by authority of which the refunding bonds were issued. This contest was carried into this case, and is presented here by the instructions given and refused. But we do not see that it is necessarily involved in this suit. The county cannot, nor does it, contend that the plaintiff was bound to accept new for old bonds, either at par or at a premium. The plaintiff, failing to get new bonds at par, offered to take cash for his old bonds. As this is a suit on the coupons of the old bonds, the only question which we need consider is the tender set up in the answer and denied by the reply.

On this issue of tender of payment the evidence is in substance as follows: Mr. Betts, after stating that he tendered the bonds to Stanton at the house of Coffin & Stanton, in New York, and demanded an even exchange which was refused, says: "After they refused the exchange I served on Mr. Stanton this notice. The notice is dated, April 1, 1889, and signed

by the plaintiff himself, and is in these words: 'Failing to obtain my legal rights in the matter of exchanging certain old funding Cass county, Missouri, bonds, for the new five-per-cent. bonds of said county, proposed to be issued to redeem said old bonds, and dated, April 1, 1889, I hereby enter my protest against the fraudulent use of power exercised in violation of law, which compels me to accept cash for said old bonds instead of the new bonds, as guaranteed to me by law.'" Betts goes on to say: "At the same time I served the notice, I offered to deliver the bonds for cash. Mr. Stanton refused to pay under protest, remarking that he did not think it just the right thing to give Henderson money to fight the county. Mr. Stanton afterwards offered to give me a certified check or the money and take the bonds at face, provided we would accept the cash without protest. I was not authorized to withdraw the protest and that terminated my transaction." His evidence shows that he treated the proffered check as money and waived tender of actual cash.

The county judges were in New York at the time in question. Mr. Lane, one of them, says Stanton and Betts had a conversation, and then they all went into a private office. While there, Stanton said he had offered to pay cash for the bonds, but Betts would only receive it under protest, and Betts said the statement was correct. Further on, this witness says Betts said he would accept the money, but would reserve his right of protest. Stanton said he would not pay the money in that way, would pay it just as he had paid others, and in no other way.

The following is Stanton's account of the interview: "I then made unconditional tender for the purchase of the face value of the bonds, which was refused. I then asked him if he wished me to tender him bills, and he said he had instructions not to accept cash, except upon the service of the paper which you have exhibited. I refused to pay the funds to him after such protest had

been made. He then served the protest upon me, and that was the last I saw of him. I offered unconditional tender of the money to him first, but he said his instructions were not to receive the money except under protest, and he refused to take the money unless he had first served the protest paper."

The evidence has been set out at some length because the first question is whether it makes out a *prima facie* case of tender, and we think it does not. A tender to be of any avail must be unconditional. The debtor cannot insist that the creditor shall admit that no more is due in respect of the debt for which the tender is made. Benj. on Sales [Bennett's Ed.] sec. 723, and notes on p. 706; notes to *Moynahan v. Moore*, 77 Am. Dec. 468; *Atkins v. Chilson*, 9 Met. 52.

The plaintiff caused his bonds to be presented for payment at the time and place where they were to be paid as it was his duty to do. *Mahan v. Waters*, 60 Mo. 167. He then offered to surrender them on payment of the amount due thereon. At the same time he filed his protest, and the defendant made a tender on the condition that the protest be withdrawn, and declined to pay unless the protest was withdrawn, which was not done. We do not see how this can be treated as a tender, for payment was made to depend upon the condition. It is true a party must accept or reject a tender as it is made; he cannot accept it and at the same time dictate the terms of the acceptance. *Adams v. Helm*, 55 Mo. 468. But here the tender made on condition was rejected, and we come back to the question whether the attached condition destroyed the validity of the tender. The defendant could no doubt say it did not admit any liability over and beyond the amount due on the bonds, but it could go no further; that is to say, it could not say the tender should be in satisfaction of any demand other than that evidenced by the bonds and coupons. The protest filed by plaintiff, though irritating and uncalled for, constituted no reason

Henderson v. Cass County.

for withholding the money. It does not require the county to make any admission that plaintiff held any other valid claim against the county, much less that the payment did not operate as full payment of the bonds and coupons. To say that there was a good tender made. in this case is to disregard all the law on that subject as we understand it to be written, and this we cannot do.

But it is said there is evidence of an unconditional tender before Betts served the protest. Mr. Stanton does say: "I offered unconditional tender of the money to him first, but he said his instructions were not to receive the money except under protest, and he refused to take the money unless he had first served the protest." But his own evidence, and that of the other witnesses, shows that no money was tendered at any time. It was all one interview in which much was said, resulting in this, that Betts waived the production of the money, but refused to withdraw his protest, and Stanton refused to pay unless it was withdrawn. But, even if a tender of the money had been made before the presentation of the protest, still the protest constituted no reason for withholding the money when Betts offered to take it. A plea of tender, to be effective, must show that defendant has always been willing and ready to pay the amount from the date of the tender. *Berthold v. Reyburn*, 37 Mo. 587. Here Betts offered to take the money and this, too, as a part of the same conversation. The evidence fails to support the alleged tender, and the judgment is reversed, and the cause remanded with directions to the circuit court to enter up judgment in favor of the plaintiff as prayed for in his petition. All concur.