Otis E. LANCASTER et al.,
Respondents,

v.

Edward L. SIMMONS et ux., Appellants.

No. KCD 28993.

Missouri Court of Appeals,
Kansas City District.

July 31, 1978.

Motion for Rehearing and/or Transfer
Denied Aug. 28, 1978.

Application to Transfer Denied
Oct. 10, 1978.

Howard D. Lay, Kansas City, of counsel; Griffin, Dysart, Taylor, Penner & Lay, Kansas City, for appellants.

John S. Newhouse and J. Samuel Newhouse, Independence, for respondents.

Before WELBORN, Special Judge, Presiding, HIGGINS, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

Because of alleged breaches of the terms and conditions of a contract for deed to farm lands about 412 acres, south of Lone Jack, Missouri, situated in Cass County, Missouri, plaintiffs brought their action, Counts I and II (intermingled) for judgment of possession of the lands, loss of rentals and waste, and for taxes; Count III, permanent injunction and accounting; Count IV, for quiet title; and Count V for conversion of standing timber. A change of venue having been taken to Jackson County, Missouri, the trial court, sitting without a jury, after making findings of fact and conclusions of law, entered judgment for plaintiffs: For possession of the lands and quieting title in them thereto; for $54,732.39, which must have included damages for rent, non-payment of taxes; and for $17,286.75, as trebled, for damages for conversion of standing timber. The trial court denied defendants' prayer for specific performance, and the propriety of that action is the dispositive issue here.

After inquiries, the parties on January 8, 1968, entered into a contract for deed agreement for the sale of the 412 acres for $90,000.00. The contract was drafted by defendant, Edward L. Simmons, who is a lawyer. Initially, the contract provided for $100.00 deposit, and $9,900.00 not later than May 1, 1971, "and Two Thousand Dollars ($2,000.00) on or before Dec. 1, 1968 and on the 1st day of each succeeding Dec. thereafter with interest at 6% per annum, interest payable semi-annually on December 1st and June 1st beginning June 1, 1968, until the amount of Eighty Thousand Dollars has been paid." Upon the payment of $9,900.00, sellers were to execute their warranty deed, taking back a note and mortgage to secure the $80,000.00 with 6% annual interest, payable semi-annually. Upon receipt of the $9,900.00, sellers were to release free and clear a described 6 acre tract in the NE corner of the S½ of the NE¼ of Section 12, Township 46, Range 30. The buyer was to pay all taxes thereafter becoming due and if not paid, the sellers could do so, and should be reimbursed for all amounts so paid with 8% annual interest. Written in is: "Said buyer is not to sell walnut logs prior to receipt of deed," and "It is expressly understood and agreed that if the buyer shall fail to pay any installment, interest, or other payment for a period of 90 days after said payment shall become due and payable, then the amount theretofore paid by the buyer shall, at the option of the seller, be forfeited to the seller as liquidated damages for breach of this contract, and on such default, will be lawful and proper for the seller, or its assigns, to take possession of said premises, and it is further agreed that upon such default the buyer shall then become a tenant of the seller as a tenant from year to year and agrees to pay Five Thousand Dollars ($5,000.00) per year as rent for such premises." It is further provided: "The seller shall within six months from the date hereof, deliver to the buyer a complete abstract of title to said property from the United States Government to this date with certificates by competent abstractors as to taxes, judgments and mechanics' liens af-

fecting said property. The buyer shall have 90 days after such delivery to examine the same." An alternative option was given plaintiffs to provide title insurance.

The evidence is that defendants took possession of the land March 1, 1968, and just barely within the 90 day grace period sent a late payment of $1,350.00 and $18.40 interest (for late payment). Plaintiffs cashed the check. For the payment due December 1, 1968, plaintiffs, on March 1, 1969, acknowledged receipt of defendants' check, dated February 2, 1969, for $4,770.00, which was 89 days late, but expressed concern that payments were not made when due. A third check for payment, $2,676.74, was dated August 29, 1969, and presumably it was received by plaintiffs within the 90 day grace period, but it was dishonored because of insufficient funds. On September 17, 1969, plaintiffs, by Dr. Lancaster, wrote Simmons, "We have not sent your check back though. It would be better from our point of view to have a new check for the total cost ex cluding the interest on the money for this month of $2,727.43." Dr. Lancaster acknowledged that he had never deposited the replacement check which he received. On September 20, 1969, defendants mailed a new check, $2,727.43, to plaintiffs, which date was 21 days past the grace period. The check bore on its reverse, "Accepted as full consideration for payment of June 1, 1969, and not as rent, under contract for deed on Cass County farm." Because of that notation, plaintiffs did not endorse or negotiate the check. Also at this time, defendants wrote plaintiffs, "We are hoping to complete the down payment this year, so would like to examine the abstract as soon as possible." This was the first time the contract provision for furnishing an abstract of title had been mentioned by defendants. Defendants' bank statement, introduced into evidence, shows that on September 16, 1969, three days before they mailed the replacement check, $2,727.43, their balance was $2,784.32. On October 4, 1969, plaintiffs wrote the Cass County tax collector, and were informed that neither the 1968 nor 1969 taxes had been paid, the

tax collector having previously been instructed to bill the taxes due to defendants.

On October 27, 1969, plaintiffs notified defendants that a statement had been received showing $724.02 unpaid taxes for 1968. At this same time defendants were notified that the contract option for forfeiture (liquidated damages) was exercised, and that the contract was converted to a year-to-year tenancy at $5,000.00 per year rental. There was also offered to defendants a lease for 1970, but this was never accepted by them. About November 1, 1969, plaintiffs received a letter from defendants stating that they had not yet received the abstract and informed them that no further payments would be made until plaintiffs furnished an abstract, and further insisted on selling back 98 acres of the farm "at approximately the same value as you sold it to me." On November 3, 1969, plaintiffs again notified defendants by letter that they had defaulted, and that the forfeiture was being exercised. Defendants responded, requesting again an abstract, and that the north 170 acres of the farm be sold and applied to the purchase price. On November 29, 1969, defendants in a letter stated to plaintiffs: "The Contract for deed is a sale and transfer of title of record and therefore you no longer have any farm to rent or anything else. * * * I am sure both of us are far to(o) busy to concern ourselves too much about a farm that is 50% useable across from a rock quarry that blasts too much to build foundations for improvement, but, as you point out, business is business. * * * We are not now and never have been in default in any payment or taxes under all the circumstances. We will keep the farm until you abide by your obligation under the contract. * * [I]f I do not receive my money back in full within thirty days, I shall sell enough of the farm to pay you off plus the small reasonable penalty provided and should you attempt to block any sale, I shall ask that you respond in damages for any loss of profits I shall have earned. * * * As soon as you decide to abide by your agreement you will find us willing to perform our end of it. * * *."

Plaintiffs paid all back taxes from 1968 through 1974, and on December 29, 1969, wrote defendants informing them that since they did not elect to rent the farm for 1970, sixty days were given them to vacate the premises. A demand to quit the premises was again given on March 24, 1970. On March 24, 1970, Dr. Lancaster again wrote defendants: "As you are aware you have defaulted on your payment due December 1 with grace period ending March 1. This is contrary to the contract for sale. This letter is written to inform you that you are remaining on the farm under protest. You were asked to give possession March 1, 1970."

Apparently, negotiations to reopen the contract for deed were made beginning April 1, 1970, when a binder for title insurance [which was plaintiffs' option under the contract] was issued by the Title Insurance Company of Minnesota. Defendants objected in certain respects and an amended binder was issued. Simmons acknowledged at trial that his objections to the title were insubstantial. Plaintiffs' counsel wrote to defendants on May 27, 1971, enclosing the amended title report as final proof of plaintiffs' ownership, and noting that counsel felt that defendants' previous default should forfeit any right to the property. Enclosed was a statement of principal and interest due under the contract, and advising that if full and total compliance with the contract was not immediately forthcoming, "we will expect your surrender of the possession of the premises, together with payment by you of the $5,000 per year rentals for 1969–1970, and 1971–1972 crop year." Defendants responded, noting previous objections to title, setting forth a plan for payment in full in two years, and noting disagreement with counsel's statement of amounts due. The re-negotiation efforts were fruitless and plaintiffs brought the present actions. At no time during any correspondence after plaintiffs' first notice of forfeiture of October 27, 1969, did plaintiffs reference anything claimed to be a basis for forfeiture other than the late payment default on the June 1, 1969, install-

ment. Dr. Lancaster's letter of March 24, 1970, noting the lack of payment of the December 1, 1969, installment, did not declare a forfeiture for that reason. The demand for possession therein referenced a previous notice to vacate, which was a result of the ineffective October 27, 1969, declaration of forfeiture.

■ Because the only default insisted upon as would cause a forfeiture is the late payment of June 1, 1969 [and the failure to pay taxes, below noted], a position maintained by plaintiffs in this court, the case must be reversed and remanded with directions for these reasons: There was no existing factual basis to invoke a forfeiture as of October 27, 1969, because Dr. Lancaster, for plaintiffs, had unequivocally waived the late payment by requesting a new check [declining defendants' offer to supply a certified new check as the evidence shows] to replace the dishonored check. *Tinnon v. Tanksley,* 408 S.W.2d 98, 100, 104[8][9] (Mo. 1966). The notation on the reverse of the check was not a new condition, but recites precisely for what the check was tendered: in full payment of the June 1, 1969, installment. The new check, including an amount for additional interest, was not deposited or otherwise negotiated by plaintiffs, but was held, even to trial, by Dr. Lancaster. The evidence shows that defendants had sufficient funds in the bank to pay the check on September 16, 1969, three days before the new check was mailed to Dr. Lancaster. That fact of sufficient funds to pay the check must be presumed to have continued for a reasonable time for presentment of payment, absent proof to the contrary, of which there is none. See the discussion of this proposition of law in *Sanderson v. New York Life Ins. Co.,* 239 Mo.App. 688, 194 S.W.2d 221 (1946); *Kreisman v. Kornfeld,* 208 S.W.2d 79, 84 (Mo.App.1948); *Martin v. Sloan,* 377 S.W.2d 252 (Mo.1964); *Clinton v. Staples,* 423 S.W.2d 1 (Mo.App.1967); and see generally, Wigmore on Evidence, § 437, p. 413, et seq., and pocket part; 31A C.J.S. Evidence § 116, p. 199, et seq.

The parties had established the practice of using checks as the medium for tender of payment, so defendants must be deemed to have made a sufficient tender of the overdue June 1, 1969, installment by their check of September 20, 1969, since plaintiffs had waived any other medium of tender. 86 C.J.S. Tender § 26, p. 570; *Domyan v. Dornin,* 356 S.W.2d 70, 72[3] (Mo.1962). Under these facts, Dr. Lancaster, on behalf of plaintiffs, could not sit back, hold the new check for more than a month, and place defendants in default. It was his duty promptly to present the new check for payment.

■ After Dr. Lancaster's direct, unequivocal declaration of forfeiture of October 27, 1969, it was not incumbent upon defendants to make further futile and useless tender of their performance. After that date, plaintiffs always insisted that defendants were only tenants, with which they emphatically disagreed. Defendants were excused from thereafter making further tender; they offered at trial to make tender if specific performance was granted. See *Wilkinson v. Vaughn,* 419 S.W.2d 1, 7[13] (Mo.1967); *Cooper v. Mayer,* 312 S.W.2d 127, 130[2, 3] (Mo.1958).

■ As noted, the contract for deed provides that if defendants did not pay taxes, plaintiffs could do so and the amounts so paid would bear interest at the rate of 8% per annum until paid. Because this agreement created an obligation or debt separate and apart from the obligation of defendants to pay for the land, and that of plaintiffs to convey the land, the failure to pay taxes is not a basis for invoking a forfeiture, especially in view of the lack of a time within which the taxes should be paid by defendants. This does not mean, however, that defendants have no final obligation to pay the taxes and interest upon specific performance being decreed them.

The trial court erroneously applied the law to the facts of this case in granting plaintiffs a judgment of forfeiture, and all resultant damages which are not allowable inasmuch as defendants maintained their status as vendees throughout by reason of not being in default. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Other

questions presented by defendants need not be ruled.

The judgment is reversed and the case is remanded with directions to award defendants a decree of specific performance upon their tender into court of their obligations under the contract for deed: full payment of the balance due on the purchase price with interest at the contract rate; the taxes paid by plaintiffs with interest according to the contract to the date of entry of the decree; less the cost of the title insurance policy provided by plaintiffs; and to enter judgment against plaintiffs and in favor of defendants upon all of plaintiffs' claims.

All concur.