**Otis E. LANCASTER, et al.,
Respondents,**

**v.**

**Edward L. SIMMONS, et ux., Appellants.**

**No. WD 31627.**

Missouri Court of Appeals,
Western District.

Aug. 18, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 1981.

Howard D. Lay, Griffin, Dysart, Taylor, Penner & Lay, P. C., Kansas City, for appellants.

Elvin S. Douglas, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for respondents.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

This case comes here for the second time. As a result of the original trial, a judgment was entered quieting title in the Lancasters and giving them possession and other relief. On the first appeal, *Lancaster v. Simmons,* 570 S.W.2d 742 (Mo.App.1978), that judgment was reversed and specific performance was ordered in favor of the Simmons upon certain conditions. On remand, a further hearing was held as a result of which an order was entered on January 23, 1980, ordering cross-performance by the parties within fifteen days. A further hearing was held in February 1980, at which the court determined that the Simmons had failed to perform as ordered and therefore ordered title quieted in the Lancasters. The Simmons now appeal from the February 1980 judgment.

The disputes between the parties originated with a contract dated January 8, 1968, under which Otis E. Lancaster and members of his family agreed to sell 412 acres of rural land to Edward L. Simmons and his wife. The terms called for a price of $90,000, payable as follows: $100.00 down, $9,900.00 by May 1, 1971, and $2,000 on or before December 1, 1968, and on each succeeding December 1st thereafter. Interest at 6% was payable semiannually on December 1 and June 1 of each year beginning June 1, 1968. The buyers were to pay taxes, and if they failed to do so the sellers were privileged to pay the taxes and in such event recover the amount thereof from the buyers together with interest at 8%. The sellers were given the option to declare a forfeiture of the contract in the event the buyers failed to pay any principal payment within a 90 day grace period after due date.

Simmons made a $100.00 down payment on January 8, 1967, a further payment of $1,368.40 in August 1968, and a $4,770.00 payment in February 1969. He then sent a check in August 1969 in the sum of $2,676.74 which was dishonored by the bank. At the request of Lancaster, the check last mentioned was replaced by a new one in September 1969.

A dispute arose over the September 1969 check because of an endorsement placed thereon by Simmons. Lancaster refused to cash the check and declared the sale contract forfeited for delinquency in payment. He thereafter filed the present suit for possession and in August 1973 obtained an order from the circuit court restraining Simmons from making certain use of the land. Judgment was entered for the Lancasters on May 10, 1976, and the Lancasters obtained possession under court process in June, 1977.

The 1976 judgment was reversed by this court on the ground that the endorsement placed by Simmons on the September 1969 check was proper and that the refusal of Lancaster to accept that check excused tender by the Simmons of subsequent accruing installments. The opinion of this court concluded with the following direction:

"The judgment is reversed and the case is remanded with directions to award defendants a decree of specific performance upon their tender into court of their obligations under the contract for deed: full payment of the balance due on the purchase price with interest at the contract rate; the taxes paid by plaintiffs with interest according to the contract to the date of entry of the decree; less the cost of the title insurance policy provided by plaintiffs; and to enter judgment against plaintiffs and in favor of defendants upon all of plaintiffs' claims."

The mandate of this court was filed in the circuit court on October 13, 1978. New disputes immediately arose between the parties. For one thing, the Lancasters claimed interest on all past due principal payments at 8%, whereas the Simmons claimed that if any interest was due at all, it should be only at 6%. For another thing, the Simmons demanded damages because of the issuance of the restraining order against them in 1973, together with restitution for their exclusion from possession following the circuit court judgment, and demanded that these damages be offset against the amounts due by them under the contract. Lancaster had a deed signed by all members of his family prepared for delivery but declined to deliver the deed until payment by the Simmons; while the Simmons at the same time refused to make any tender of money until the disputes between the parties were settled and receipt of good title by them was assured.

After two months of argument, the Simmons filed on December 13, 1978, a Motion to Follow Mandate of Court of Appeals, a Motion for Restitution and a Motion to Assess Damages on Restraining Order Bond and for Loss of Use and Possession. The prayer in the Motion to Follow Mandate was as follows: "Defendants pray that the trial court reverse its previous order and enter judgment in the form of Exhibit A attached and provide for full payment less allowance for taxes, interest and other damages while Plaintiffs were in possession under the judgment now reversed or for full payment with an offsetting judgment under the following motion for restitution with all costs taxed against Defendants." No tender of any kind into court accompanied the filing of these motions.

The arguments between the parties continued for another full year. The opposing contentions are summarized in a series of letters which passed between counsel. One of these, a letter from the Lancasters' lawyer to the Simmons' lawyer, stated: "I * * would call your attention to the fact that we have never received a tender of funds either in the amount claimed by us, or in the amounts admittedly due under your calculations. My proposals for sums due have been summarily rejected without any attempt on your part to reveal the method of your calculation. * * * My only reason for reluctance at this time to agree on possession is the lack of assurance that the purchase price will be forthcoming. In view of the history of this case and Mr. Simmons' failure to make payments or tender of payments through the years, causes me considerable concern about his ability to provide the portion of the purchase price now past due. If you can provide assurance of funds available from financial institutions or other source of funding, I will be happy to favorably consider the request for possession by agreement." The Lancasters' lawyer further wrote on August 21, 1979, as follows: "I want to reiterate that following the Court of Appeals' Order we assumed that Mr. Simmons would make a tender of the purchase price to accompany his request for possession * * * We are desirous of closing the transaction as soon as possible, and stand ready to do so. I have had the deed signed for some period of time from members of the family, and as soon as we can be assured of the receipt of the proper amount of funds we will be in a position to close."

Simmons' position, on the other hand, is stated by a letter from his lawyer dated

September 20, 1979, which states: "Ed wants to have a voluntary commitment of you and your client to close this deal as an ordinary real estate sale and closing at some date agreed upon in the near future or he wants a date for hearing by the Court to force the closing. * * * You can be assured as requested that the proper amount of funds will be paid at closing. The question is whether we must pay the accrued interest and taxes without a hearing on the adjustment under our claims for restitution and damages or to wait and pay the net amount after those damages are assessed by the Court. * * * Will you and your client close the deal and make some provision for security when and if Simmons prevails on his damage claim? If not, what is your proposal to compensate him for the lost use of the premises since the injunction and/or the eviction. If you have no proposal or interest in either of the foregoing what exactly do you propose to give marketable title pending a decision on these claims? * * * "

Finally a new hearing was held in the circuit court in January 1980, to determine the disputes. The court found the taxes and interest were due by the Simmons in the amount of $17,109.62; That there were principal payments past due in the amount of $31,900.00 on which interest was due at 8%; that the principal sum not yet due was $56,000.00; that total interest due on the purchase price amounted to $95,139.98; and that Simmons was entitled to offsetting restitution in the amount of $1,391.83 based on net rentals received by Lancaster after he obtained possession in 1977 under the circuit court judgment. In keeping with those findings, an interlocutory decree was entered on January 23, 1980, ordering that Lancaster tender a deed to the property within 15 days and that within the same period of time Simmons and his wife sign a note secured by deed of trust for the unmatured balance of the purchase price and that they tender to the court certified funds in the aggregate amount of $142,332.77, plus a per diem amount of $35.00 to cover interest from the date of the decree until payment into the registry of the court.

The parties appeared in court by counsel on February 7, 1980, at which time Lancasters' attorney was prepared to deliver the warranty deed. However, Simmons' attorney stated a refusal by his clients to make any tender as ordered by the interlocutory decree, on the following grounds: "[T]here does have to be a final judgment, and I did not consider that judgment that you previously entered to be such a final judgment. It's our position that if judgment had been in accordance with the Mandate of the Court of Appeals, we would have been obligated to tender, but of course, we don't feel it's in any way in accord with the Findings of Fact and Conclusions of Law of the Court of Appeals so we think we are entitled to some sort of review."

Thereafter on February 15, 1980, the trial court entered final judgment. This judgment readopted the findings of fact and conclusions of law contained in the interlocutory order. The court further found that the Simmons had not tendered to the court the sums of money due or the note and deed of trust prescribed by the interlocutory order. The court therefore ordered judgment in favor of Lancasters and denied Simmons' claim for specific performance.

Simmons' Points Relied Upon, as understood by us, allege the following errors: (1) that the interest on unpaid installments of the principal purchase price should have been calculated at 6% instead of 8%; (2) that the award of damages to Simmons by way of restitution was inadequate; and (3) that the January 23, 1980 interlocutory judgment was null and void, that they had no obligation to comply with a void order, and their noncompliance with that order cannot support the final judgment of February 15, 1980. Those points will be discussed in reverse order.

I.

The Simmons argue that the order of January 23, 1980, was null and void be-

cause: (1) that order was conditional, not final, and not appealable. They contend that they were entitled to have an order entered from which they could appeal and which would be subject to appellate review. (2) The January judgment, so they say, was contrary to the mandate of this court issued following the first appeal.

The Lancasters argue, on the other hand, that the January order should have been complied with by the Simmons and that order is no longer open to objection or appellate review. They contend that if the Simmons wanted to have an appellate court pass upon their objections, their remedy would have been by way of applying for a writ of prohibition. They further argue that even if the January order is reviewable in this proceeding, the order contained no error. Each party is partly right and partly wrong in their respective contentions.

■ The trial court did not err in following the procedure of issuing an interlocutory order outlining action to be taken by each side, that to be followed in due course by a final decree. That procedure was specifically authorized in *Wallace v. Hankins*, 541 S.W.2d 82 (Mo.App.1976) and in *Shelton v. Julian*, 592 S.W.2d 551 (Mo.App.1980).

■ The use of that procedure did not deprive the Simmons of their right to appellate review of the January interlocutory order. Although an interlocutory order is generally not itself appealable, the action of the court in that regard becomes reviewable as part of an appeal taken from the final order thereafter entered. *England v. Poehlman*, 359 Mo. 369, 221 S.W.2d 742 (1949); *Merrick v. Lensing*, [Nos. 43558 and 43562, Missouri Court of Appeals Eastern District, decided June 16, 1981]; *Reid v. Jones*, 594 S.W.2d 339 (Mo.App.1980); *State ex rel. Centropolis Tr. Co. v. Public Service Commission*, 472 S.W.2d 24 (Mo.App.1971); *Goldsworthy v. Dobbins*, 110 Cal.App.2d 802, 243 P.2d 883 (1952). Under these authorities, Simmons' objections to the interlocutory order on the merits are reviewable

at this time and will be considered under Sections II and III of this opinion.

■ No valid objection lies against the interlocutory order on the jurisdictional basis that it violated the mandate of this court. The argument made by the Simmons in this respect is that the direction of this court was that Simmons pay all past due installments on the purchase price "with interest at the contract rate." The Simmons say that contract rate was 6%, and that it was not open for the trial court to determine, as it did, that interest should be computed at 8%. The fallacy of this argument lies in the fact that a legitimate dispute existed between the parties as to whether the original 6% contract rate had been modified thereafter by subsequent agreement of the parties. Thus the question of the amount of the "contract rate" was properly a matter for inquiry and determination upon remand.

## II.

The Simmons argue that the trial court erred in awarding them inadequate damages under the interlocutory decree. The damages demanded by the Simmons were as compensation for the issuance of the restraining order in August 1973 and their being dispossessed in June 1977 under the original judgment of the circuit court. This demand for restitution rests on that part of the mandate from this court to the trial court which provides that "said appellant[s] be restored to all things lost by reason of said judgment [the original circuit court judgment]."

■ The Simmons are generally correct in their position that the trial court after remand must make restitution to the successful appellant with respect to all benefits secured by the respondents under the judgment which has been reversed. *De Mayo v. Lyons*, 360 Mo. 512, 228 S.W.2d 691 (1950); *State ex rel. Abeille Fire Ins. Co. v. Sevier*, 335 Mo. 269, 73 S.W.2d 361 (1934). However, the damages to be given by way of

restitution are not open-ended. So in *De Mayo*, it was held that the restitution should be of the amount received by the plaintiff under execution, interest from the date of levy and repayment of taxable costs with respect to the original trial, the first appeal and the second appeal. The same subject was also considered in *Hurst Automatic Switch & Signal Co. v. Trust Co.*, 291 Mo. 54, 236 S.W. 58 (1921) where it was held that the plaintiff who was successful on appeal was entitled to restitution by way of a writ of possession; an accounting of rents and profits or the rental value of the property; waste or damage occasioned to property and crops; all taxable costs and expenses; and the amount paid by the plaintiff to satisfy a judgment and costs in a connected unlawful detainer action. However, it was also held that the plaintiff was not entitled to recover attorneys fees or other litigation expenses not taxable as costs, and the plaintiff could not recover for purely speculative damages.

■ Simmons' claim for damages in the present case runs afoul of the foregoing rules. The only evidence submitted by them by way of any specific amount claimed to be suffered by them was the testimony by Edward Simmons (himself a lawyer) outlining the amount of legal time spent by him in this litigation and the reasonable value thereof. As held in *Hurst Automatic Switch & Signal Co., supra*, that is not proper damages to be recovered.

The only other evidence in the case bearing on specific damages was that offered by the Lancasters to show the net amount received by them from rental of this acreage during the period they had possession under the original circuit court decree. The trial court did give the Simmons credit for the full amount of those net rentals, and the court further found that "no other competent evidence for restitution during such period of possession of plaintiffs was submitted to the Court, either of actual loss or of the fair rental value of the property during such period of time, except for the

net amount realized by plaintiffs." Furthermore, with respect to the damages claimed by reason of the issuance of the temporary restraining order, the trial court found in part: "No evidence of damages was submitted to the Court at the hearing on January 7, 1980 * * *." Those findings accurately reflect the record.

■ Apparently realizing their difficulties arising from lack of proof of any specific damages, the Simmons argue in this court that restitution should be measured by giving them not only the income received by the Lancasters while the latter were in possession, but also an abatement of interest and taxes during that period of time. Any such solution would fly directly in the teeth of the directions given in this court on the first appeal which included the direction that the Simmons would not be entitled to specific performance except upon their payment of interest and taxes. Furthermore this proposal by the Simmons would conflict with the ruling in *Hurst Automatic Switch & Signal Co., supra*, to the effect that there can be no recovery of speculative damages.

### III.

The interlocutory decree ordered the Simmons to pay interest on all unpaid installments of the purchase price at 8% from the dates upon which each installment became due. The Simmons argue that said calculation of interest was erroneous for two reasons: (1) there is no special provision in the contract for 8% interest on late payments, but the only interest specified with respect to any principal payments on the purchase price is 6%; and (2) the timely payment of installments after September 1969 was waived by reason of Lancaster's refusal of the September 1969 check, as held by this court in its opinion on the first appeal; accordingly, the Simmons argue that installments after September 1969, although not paid on the specified due dates, are nevertheless not "late."

With respect to whether the contract rate for late payments should be deemed to be 6% or 8%, the trial court at the original hearing and again at the hearing on remand heard evidence and received documentary exhibits concerning the actions of the parties subsequent to the date of the written contract and which the Lancasters claim to constitute a modification of the original contract so as to provide that late payments should carry interest at 8%. The trial court at both the original trial and again after hearing on remand found in favor of the Lancasters on this issue. We have reviewed the evidence with respect to this matter and rule that the findings in favor of the 8% rate should be affirmed under the standards specified in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

A more difficult question is presented with respect to whether the installments which accrued from September 1969 to October 13, 1978, (the date when the mandate from this court was filed in the circuit court) should be considered late payments subject to the 8% rate of interest. The ruling of this court on the first appeal with respect to the Lancasters having waived tender of payment during that period of time makes it reasonable to say that the installments which accrued during that period but remained unpaid were nevertheless not "late," at least until a reasonable time following the filing of the mandate from this court in the circuit court. For purposes of this opinion, we assume without holding that those installments were not "late." On that assumption, the interlocutory order was erroneous to the extent that it computed all installments coming due during that period to carry interest after accrual at 8%.

Nevertheless, the final decree of February 15, 1980, reached the correct result despite the error just mentioned. Where the trial court reaches a correct result, even though pursuant to an erroneous reason, the decree must be affirmed. *Koedding v. N. B. West Contracting Co.,*

*Inc.,* 596 S.W.2d 744 (Mo.App.1980); *Kenilworth Ins. Co. v. Cole,* 587 S.W.2d 93 (Mo. App.1979); *Gross v. Gross,* 557 S.W.2d 448 (Mo.App.1977).

The governing factor in the present case is that the Simmons have failed to comply with the mandate of this court which disposed of the first appeal. In discussing that failure and its effect, we must begin with the ancient maxim the one seeking equity must do equity. Springing from this fundamental concept, it has frequently been said that the equitable relief of specific performance does not issue as a matter of course, but only as a matter of grace, and that the grant of this relief rests in the sound discretion of the court in light of the conduct of the party seeking relief. *Durretts v. Hook,* 8 Mo. 374 (1844); *Houtz v. Hellman,* 228 Mo. 655, 128 S.W. 1001 (1910); *Hackbarth v. Gibstine,* 182 S.W.2d 113 (Mo.App.1944); *Zoellner v. Carty,* 585 S.W.2d 289 (Mo.App.1979); *Luker v. Brockmiller* [No. 43222, Missouri Court of Appeals Eastern District, decided July 7, 1981].

Starting from the foregoing principles, a standard requirement has evolved that a party seeking specific performance must himself tender everything that is due on his part. Thus if an appellate court reverses a judgment adverse to specific performance and orders that specific performance be awarded, the rule is that the party successful on appeal must timely tender performance on his part. Thus in *Cook v. Eilers,* 608 S.W.2d 103 (Mo.App. 1980) a mandate ordered specific performance and required a closing within 60 days. It was held that the successful appellant's failure to comply with the 60 day time limit forfeited his right to the specific performance.

So also in *McClain v. Roberts,* 198 Iowa 959, 200 N.W. 613 (1924), the appeal court ordered that the seller specifically perform a land contract by delivering a deed and that the buyer make payment 20 days thereafter. The buyer did not comply with

the 20 day specification on the reasoning that the receiver holding the land had not made a proper accounting of rents and profits. The Iowa Supreme Court held that such an accounting was not a condition precedent to the consummation of the contract, that the buyer was therefore in default, and that the right to specific performance had therefore been lost.

■■■■ The present case differs from *Cook* and *McClain* only in that this court on the first appeal did not specify a given number of days within which the Simmons were to perform their part of the agreement. In the absence of such a specification of time, the Simmons were obligated to tender their performance within a reasonable time. 81A C.J.S. Specific Performance Sec. 217, p. 205 (1977). The mandate from the first appeal was filed in the circuit court long ago on October 13, 1978, and even now, almost three years later, the Simmons still have not performed. This certainly must be considered a failure to perform within a reasonable time.

Nothing that the Simmons did can be accepted as even approximating a proper tender of performance. Under the directions of this court the Simmons were to be awarded specific performance "upon their tender into court of their obligations under the contract for deed." In other words, they were the ones who had the burden of taking the initiative and acting first before their right matured to a deed from the Lancasters. Despite requirement of action on their part, they never tendered anything specific.

The stance taken by the Simmons is rather well summarized by the letter of their own attorney dated September 20, 1979, which takes the position that the Simmons were not obligated to tender anything beyond the net amount owed by them after adjustment and credit under their claims for restitution. Even worse, they offered no specific evidence or figure of what the amount of their claim should be, but instead as shown by the same letter from their attorney, they attempted to place the burden upon the Lancasters to make an offer on which to settle the Simmons' claim for restitution. Aggravating the situation even more, the extent of offsetting damages being claimed by the Simmons was grossly exaggerated and unjustified, as shown in Section II of this opinion.

■■■ To make the matter still worse, it is very doubtful whether the Simmons were even in a position to pay what they owed, even that portion admitted by them to be due. This doubt appears from Simmons' own testimony given at the hearing in January 1980. In the course of that testimony Simmons was asked whether he had the property in question offered for sale in January of 1979, and he answered as follows: "It was listed at that time. I was trying to comply with the Court's order to pay Mr. Lancaster, yes." Although Simmons did go on to state that he was ready, able and willing to complete the sale, nevertheless in connection with that testimony, he added that he would only be able to close by getting a loan and that would require clearing the title.[1] In a situation where a buyer can only perform conditioned upon being able to get the funds from someone else, the tender cannot be considered an acceptable one. *Lowry v. Northwestern Sav. & Loan Ass'n.*, 542 S.W.2d 546 (Mo.App.1976).

---

1. His testimony in that latter regard was as follows:

"Q. And you have financial arrangements made so that you can close the sale within a few days then if the Court determines the amount that's due by you?
A. The title has to be cleared.
Q. I'm just saying—
A. Whenever the title is cleared, yes, I can close it.

Q. So it's a matter of, just a matter of days, whenever the deeds deposited in the Court, you can close?
A. Whenever Chicago Title will guarantee the title. I have to get a guaranteed title; I can't get any loan until I do.
Q. But that can be forthcoming immediately following the tender of the deed into the Court then?
A. I would hope that it could be done at the same time."

The law is clear that a tender must be unqualified and unconditional. *Kitchen v. Clark*, 1 Mo.App. 430 (1876); *Henderson v. Cass County*, 107 Mo. 50, 18 S.W. 992 (1891); *Danciger Bros. v. American Express Co.*, 172 Mo.App. 391, 158 S.W. 466 (1913); *Saussenthaler v. Federal Union Surety Co.*, 197 Mo.App. 112, 193 S.W. 286 (1917); *Defeo v. Goodwin*, 221 Mo.App. 789, 287 S.W. 1075 (1926); *Harbaugh v. Ford Roofing Products Co.*, 281 S.W. 686 (Mo.1926); *Lowry v. Northwestern Sav. & Loan Ass'n., supra; McClain v. Roberts, supra.* Particularly pertinent to the present situation is the following statement in 86 C.J.S. Tender Sec. 10, p. 564 (1954): "In general, a tender of a balance of an amount due over an offset is not a sufficient tender." Note also the statement in the same work in Sec. 12 at p. 565: "A failure to tender the correct amount due is not excused by the fact that the creditor makes an excessive demand."

It may well be that the broad rules laid down by the above authorities should be liberally interpreted and perhaps relaxed to meet the exigencies of particular factual situations. However, we need not be distracted here by attempting to formulate rules to cover hypothetical cases. It is sufficient for the purposes of this case to say that the Simmons never offered performance of their duty, no matter how liberally construed in their favor.

Under the facts of this case, the Simmons never made what can be recognized as a proper tender. By failing to do so within a reasonable time they violated the terms upon which this court declared that they were entitled to specific performance. That violation had forfeited their right to specific performance independent of, wholly apart from, and long prior to the interlocutory decree dated January 23, 1980. Their refusal to recognize and their flouting of the interlocutory decree merely carried forward another step the recalcitrant course they had been following ever since October 13, 1978. The totality of their conduct was such as to bar them from equitable relief. The trial court reached the proper conclusion in declaring that the Simmons' right to specific performance had been forfeited by them. The judgment is therefore affirmed.

All concur.